UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIHEEM WILMER,

                            Plaintiff,
                                                            1:19-CV-1416
v.                                                          (GTS/TWD)


ALBANY COUNTY POLICE, SCOTT GAVENDY,

                            Defendants.
_____

APPEARANCES:

TIHEEM WILMER
Plaintiff, *pro se*
2 Kent Street
2nd Floor
Albany, New York 12208

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

        *Pro se* Plaintiff Tiheem Wilmer ("Plaintiff") filed a civil complaint against the Albany

County Police and Scott Gavendy ("Officer Gavendy") ostensibly of the Albany County Police

Department (collectively "Defendants") alleging Defendants violated his constitutional rights.

(Dkt. No. 1.)  This action was originally filed in the Western District of New Yok, however, by

order dated October 3, 2019, this case was transferred to the Northern District of New York

because Defendants reside within this district.  (Dkt. No. 4.)  Currently before the Court is

Plaintiff's application to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)  As noted

herein, the Court grants Plaintiff's IFP Application, necessitating further review relative to

whether the pleading meets 28 U.S.C. § 1915(e)'s sufficiency standards.  For the reasons

discussed below, the Court finds Plaintiff's complaint fails to state a claim for which relief can be granted and, therefore, recommends Plaintiff's complaint be dismissed with leave to replead.

## I.      PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP Application, the Court finds Plaintiff meets this standard.  Therefore, Plaintiff's IFP Application (Dkt. No. 2) is granted.

## II.     SUFFICIENCY OF THE COMPLAINT

### A.      Standard of Review

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). Moreover, a *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive"

such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.    Summary of the Complaint

According to Plaintiff, Officer Gavendy performed a warrantless "manual anal body cavity search" on Plaintiff on January 7, 2016. (Dkt. No. 1 at 5.) Additionally, Plaintiff asserts Officer Gavendy used a stun gun or taser to arrest him on January 7, 2016. (*Id.*) Based on these facts, Plaintiff asserts an excessive force and illegal search claim in violation of the Fourth Amendment to the United States Constitution and the New York Constitution. (*Id.* at 5, 6.)

The Court notes Plaintiff's lawsuit was filed on May 7, 2019, and the alleged incident giving rise to his claims occurred more than three years earlier, on January 7, 2016. In New York, excessive force and illegal search claims are subject to a three-year statute of limitations. *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). However, because statute of limitations is an affirmative defense and waived if not raised in the answer to the complaint, *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 752 (2d Cir. 1992), the Court does not recommend dismissing his claims on this basis at this time.

### C.    Analysis

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging claims sounding in excessive force and illegal search. (Dkt. No. 1.) As a general matter, section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 'is not itself a source of substantive rights[,]' . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'"

*Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443

U.S. 137, 144 n.3, 99 (1979)).  To state a claim pursuant to section 1983, a plaintiff must allege

"(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has

deprived him of that right acted under color of state . . . law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d

Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

      a.      **Officer Gavendy – Excessive Force and Illegal Search**

"[C]laims that law enforcement officers have used excessive force—deadly or not—in

the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under

the Fourth Amendment and its 'reasonableness' standard[.]"  *Graham v. Connor*, 490 U.S. 386,

395 (1989).  The standard governing excessive force is "whether the officers' actions [were]

'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation."  *Id.* at 397 (citations omitted).  "[T]he Second Circuit

has held that even minor injuries, including scrapes and bruises, can support an excessive-force

claim."  *Matthews v. City of New York*, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012).

"A 'search' in the context of the Fourth Amendment occurs when the police intrude upon

a person's reasonable expectation of privacy or if the police otherwise trespass upon one's

person, house, papers, or effects for the purpose of acquiring information."  *Jennings v. Decker*,

359 F. Supp. 3d 196, 207-08 (N.D.N.Y. 2019) (citations omitted).  "In narrow circumstances, a

suit for damages attributable to an allegedly unreasonable search may lie even if the challenged

search produced evidence that was introduced in a state criminal trial resulting in the § 1983

plaintiff's still-outstanding conviction" as long as the suit "would not necessarily imply that the

plaintiff's conviction was unlawful."  *Corely v. Vance*, No. 15 Civ. 1800 (KPF), 2015 WL

4164377, at *4 (S.D.N.Y. June 22, 2015).

Here, Plaintiff did not allege any facts regarding his arrest and subsequent search and has therefore failed to plead a viable excessive force or illegal search claim.  Notably, neither the use of a stun gun to effectuate a lawful arrest or a body cavity search are *per se* unconstitutional and rather require a consideration of the factual circumstances surrounding each.  *See, e.g., Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (summary order) (stun gun); *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 338 (2012) (strip search). In other words, Plaintiff's allegations that Officer Gavendy conducted a "warrantless" search and assaulted him are conclusory and unsupported by any factual enhancement.  Accordingly, the Court recommends these claims be dismissed with leave to replead to expound on the factual details of his claims including the circumstances leading to his arrest and its aftermath.

Moreover, Plaintiff references the New York State Constitution as a basis for these claims.  (Dkt. No. 1 at 5, 6.)  "The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983."  *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (summary order) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996)).  Thus, the Court recommends dismissing these claims because alternative remedies are available—if properly pled—under Section 1983. *See Clayton v. City of Poughkeepsie*, No. 06 CIV.4881 SCR, 2007 WL 2154196, at *7 (S.D.N.Y. June 21, 2007) (citing cases).

**b.**     **Albany County Police Department**

Plaintiff identifies the Albany County Police Department as a Defendant in the caption of his complaint, yet makes no factual allegations against this Defendant in the body of the complaint.  (Dkt. No. 1.)  Nonetheless, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."

*Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county

sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, 07-CV-245, 2010

WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are

merely administrative arms of a municipality do not have a legal identity separate and apart from

the municipality and cannot sue or be sued."); *see, e.g.*, *La Grande v. Town of Bethlehem Police

Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009)

("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the

plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department.");

*Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13,

2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of

Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing all claims against the Albany County Police

Department with prejudice. However, in deference to Plaintiff's *pro se* status, the Court

recommends that Plaintiff be provided with an opportunity to amend his complaint to clarify

claims, if any, he intended to allege against the appropriate municipality.[1]

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[2] and it is further

---

[1] The Second Circuit has directed district courts to grant leave to *pro se* litigants to amend their complaints to name the municipality in which a police department sits as the real party in interest when a case is dismissed against a police department on the grounds that it is not an entity capable of being sued. *See Morris v. New York City Police Dep't*, 59 F. App'x 421, 422-23 (2d Cir. 2003) (summary order) (directing the district court to permit amendment of the complaint to name the City of New York as a defendant when the suit was dismissed against the New York City Police Department on the grounds it was not a suable entity).

[2] Plaintiff should note that although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that the Complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** as against the Albany County Police Department with leave to replead and substitute the appropriate municipal entity as the real party in interest; and it is further

**RECOMMENDED** that the Complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as against Officer Gavendy; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: November 25, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2015 WL 4164377
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Royce CORLEY, Plaintiff,

v.

Cyrus R. VANCE, Jr., et al., Defendants.

No. 15 Civ. 1800(KPF).
|
Signed June 22, 2015.

### ORDER TO AMEND

KATHERINE POLK FAILLA, District Judge.

**\*1** Plaintiff, proceeding *pro se* and *in forma pauperis,* filed this action under 42 U.S.C. § 1983, alleging false arrest and other claims arising out of his arrest on state charges. He further seeks to proceed under a pseudonym in this matter. Plaintiff is directed to amend his complaint (the "Complaint") for the reasons set forth below. [1]

### STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (internal quotation marks and citations omitted) (emphasis in original).

### BACKGROUND

Plaintiff Royce Corley is currently incarcerated at F.C.I. Danbury, having been convicted in this District on federal charges involving sex trafficking of minors and possession of child pornography. *See United States v. Corley,* No. 13 Cr. 48(RPP) (S .D.N.Y. Apr. 21, 2014), *appeal pending,* No. 14–1709 (2d Cir.). [2] In January 2015, Plaintiff filed the Complaint, alleging constitutional violations and violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), the Right to Financial Privacy Act ("RFPA"), and the Driver's Privacy Protection Act ("DPPA"). Plaintiff also asserts state law claims over which he asks this Court to exercise diversity and supplemental jurisdiction. Named as defendants are: New York County District Attorney ("DA") Cyrus R. Vance, Jr., and DA's Office personnel David Stuart, John Temples, Greg Weiss, and Elizabeth Pederson; New York Police Department ("NYPD") officers Brian Conroy, Michael Daly, Mark Woods, Jessica Sterling, Giancarlo Cavallo, and Greg Smith; Mayor's Office of Special Enforcement ("OSE") counsel Shari C. Hyman; and various private individuals and entities, including Consolidated Edison ("Con Ed") employees Michael T. Haggerty and Walter Panchyn, Backpage.com, LLC, Sprint Nextel Corp., T–Mobile USA Inc., Facebook Inc., Google Inc., Time Warner Cable Inc. ("TWC"), Research in Motion Ltd. ("RIM"), the Municipal Credit Union ("MCU"), Capital One N.A., JP Morgan Chase Bank N.A., and several John Doe defendants.

The Complaint sets forth the following facts: In 2007, Plaintiff "was informally doing business under the nom de guerre 'Ron Iron' providing advertising and web development services to escort, therapeutic and adult-oriented businesses." (Compl.¶ 22). In 2008, Plaintiff began working as a technician for Con Ed. (*Id.* at ¶ 23). In 2009, an individual who had been convicted of promoting prostitution "vindictively" forwarded to law enforcement false information implicating Plaintiff in illegal activity. (*Id.* at ¶ 26). In consequence, law enforcement: (i) induced a minor to work as a confidential informant and prostitute to manufacture evidence against Plaintiff; (ii) tampered with advertisements appearing on Backpage.com by "altering 'AdOid' posted by other individuals, or created by the defendants"; and (iii) used fabricated evidence to obtain court orders, subpoenas, and warrants. (*Id.* at ¶¶ 27–29, 39–41). Accordingly, "despite using a warrant, defendants had no probable cause" to obtain access to Plaintiff's accounts, search his apartment and Con Ed office, or seize his cell phones, electronic media, and credit cards. (*Id.* at ¶¶ 46–47).

**\*2** Plaintiff asserts that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures. [3] (Complaint ¶ 26). Backpage.com is alleged to have "aided and abetted" law enforcement

"by granting them unlimited access to password-protected accounts without the proper legal authority," and the other private entity defendants are alleged to have provided law enforcement with Plaintiff's records, e-mails, and instant messages. (*Id.* at ¶¶ 24, 38, 60–62). Plaintiff was indicted in this Court on January 22, 2013. *See* No. 13 Cr. 48 (Dkt.# 1). The state charges were dismissed on February 1, 2013, which Plaintiff characterizes as a favorable termination. (*Id.* at ¶¶ 46). Plaintiff was convicted in this District on April 21, 2014.

Plaintiff asserts federal claims of false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, malicious abuse of process, conspiracy to violate due process, fabrication of evidence, and violations of the rights to a speedy trial and to privacy, as well as state law claims of negligence, intentional infliction of emotional distress, and fraud. (Compl.¶¶ 72–84). Plaintiff alleges that the private defendants conspired with state actors to violate his constitutional rights and also failed to train their employees properly with respect to releasing customer information. Plaintiff further asserts that the private defendants violated federal statutes that limit disclosure of electronic records and communications. (*Id.* at ¶¶ 60–63). Plaintiff seeks money damages. Plaintiff has also moved to proceed under a pseudonym, "[g]iven the highly sensitive and personal nature of this suit" involving "the prostitution of minors" and the "risk identification poses for retaliation and further personal embarrassment to Plaintiff and innocent nonparties." (Dkt. # 6 at ¶¶ 4–5).

## DISCUSSION

### A. Rule 8 of the Federal Rules of Civil Procedure
As an initial matter, Plaintiff's complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." It is not enough for a complaint to state that the defendant unlawfully harmed the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint must include "factual enhancement" of the plaintiff's legal claims; in other words, a complaint must include some background information about how the defendant harmed the plaintiff. *Id.* (citing *Twombly,* 550 U.S. at 557). The Supreme Court has held that this rule requires a plaintiff to plead a claim that is "plausible" in light of the facts alleged. *Twombly,* 550 U.S. at 570. "[T]o present a plausible

claim at the pleading stage, the plaintiff need not show that [his or her] allegations ... are more likely than not true." *Anderson News, LLC v. Am. Media, Inc.,* 680 F.3d 162, 184 (2d Cir.2012). Instead, a complaint must include sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929).

**\*3** The Complaint is not a "short and plain" statement of his claims. Any amended complaint that Plaintiff files must include specific facts explaining what each defendant did or failed to do and how those actions violated his rights. Additionally, Plaintiff must address the substantive deficiencies set forth below.

### B. Section 1983 Claims Implicating the Invalidity of Plaintiff's Conviction
As pleaded, Plaintiff's speedy trial, false arrest, false imprisonment, and malicious prosecution claims are barred because his criminal proceedings were not terminated in his favor. *See Heck v. Humphrey,* 512 U.S. 477, 484–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 48687. Thus, the putative plaintiff's § 1983 claim must be evaluated on the following basis:

> [The Court] must consider whether a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [Court] determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be

allowed to proceed, in the absence of some other bar to suit.

*Id.* at 487; *see also Duamutef v. Morris,* 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997).

Plaintiff asserts that the dismissal of the state charges brought against him constitutes a favorable termination. However, Plaintiff was prosecuted federally for the same conduct, and later convicted. Where, as here, "the Federal and State actions are inextricably intertwined and substantially related to one another," the *Heck* rule applies to bar Section 1983 claims based on the dismissed state charges. *Bogle v. Melamed,* No. 09 Civ. 1017(RJD), 2012 WL 1117411, at *3 (E.D.N.Y. Mar.30, 2012) (quoting *Thompson v. Delvalle,* No. 07 Civ. 4691(BSJ), 2010 WL 2505638, at *3 (S.D.N.Y. June 21, 2010)); *cf. Thompson v. Grey,* No. 08 Civ. 4499(JBW), 2009 WL 2707397, at *3 (E.D.N.Y. Aug 26, 2009) (finding false arrest claim barred where second grand jury shown new evidence from subsequent investigation of same crime scene indicted after first grand jury refused to indict); *Peros v. Castano,* No. 01 Civ. 4457(JG), 2002 WL 3603042, at *4 (E.D.N.Y. Mar.22, 2002) (holding that termination is favorable to plaintiff if court's reasons for dismissing the criminal charges are not inconsistent with innocence of the accused, citing *Cantalino v. Danner,* 96 N.Y.2d 391, 395, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001)). In this case, Plaintiff was arrested on federal charges arising out of the same events and conduct underlying the state charges. In this context, the dismissal of the state charges is not a favorable termination. *Thompson,* 2010 WL 2505638, at *3.

**\*4** Given that there has not been a favorable termination, the Court now examines whether any of Plaintiff's Section 1983 claims might be able to proceed notwithstanding the conviction because they do not implicate the validity of that conviction. Plaintiff's Sixth Amendment speedy trial claim necessarily implicates the validity of his conviction. *See Montane v. Pettie,* No. 10 Civ. 4404, 2012 WL 1617713(ARR), at *3 (E.D.N.Y. May 8, 2012); *Davis v. New York,* No. 90 Civ. 6170(MBM), 2003 WL 1787151, at *1 (S.D.N.Y. Apr.2, 2003) (dismissing speedy trial claim where plaintiff could not show that the conviction had been invalidated); *see also Zarro v. Spitzer,* 274 F. App'x 31, 34 (2d Cir.2008) (summary order) (affirming *sua sponte* dismissal of claims raising questions about plaintiff's Sixth Amendment right to counsel because such claims implicate the validity of conviction). That claim is therefore dismissed.

Favorable termination is a prima facie element of a malicious prosecution claim. *See Heck,* 512 U.S. at 484–86. Accordingly, Plaintiff's malicious prosecution claim is dismissed.

Plaintiff may, however, be able to assert certain of his Fourth Amendment claims. In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. *Heck,* 512 U.S. at 487 n. 7. "Because of doctrines like independent source and inevitable discovery ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* (citing *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

To determine if a Section 1983 claim alleging an unlawful search would necessarily imply the invalidity of his conviction, the Court must "ascertain whether plaintiff could have been convicted even if the ... evidence [from the allegedly illegal search were] suppressed[.]" *Bibbins v. Nextel Comm., Inc.,* No. 08 Civ. 5075(CM), 2010 WL 4503120, at *4 (S.D.N.Y. Nov.19, 2010); *see also Zarro,* 274 F. App'x at 35–36 (reversing in part the district court's order dismissing plaintiff's claims on *Heck* grounds and holding that plaintiff's illegal search claims would not imply the invalidity of his conviction); *Bogle,* 2012 WL 1117411, at *3; *Jean–Laurent v. Hennessey,* No. 05 Civ. 1105(JFB), 2008 WL 3049875, at *8 (E.D.N.Y. Aug.1, 2008) ("*Heck* does not bar plaintiff's claim for ... unreasonable search and seizure"); *Powell v. Scanlon,* 390 F.Supp.2d 172 (D.Conn.2005) (claims for damages attributable to an allegedly unreasonable search would not necessarily imply the invalidity of a conviction, such as where the "conviction is obtained by independent evidence untainted by the wrongful arrest").

**\*5** Here, the factual record is insufficient to determine whether evidence obtained as a result of the allegedly unlawful arrest was essential to plaintiff's conviction. *See, e.g., Fifield v. Barrancotta,* 353 F. App'x 479, 481 (2d Cir.2009) (summary order) (remanding to the district court to determine the applicability of *Heck* to the appellant's Fourth Amendment claims). [4] However, in this context, "to recover compensatory damages, a § 1983 plaintiff must prove not only that a search was unlawful, but that it caused him actual,

compensable injury, which, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck,* 512 U.S. at 487 n. 7 (citing *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)). Plaintiff does not allege that he suffered an actual, compensable injury beyond his conviction and imprisonment. At this early stage, however, Plaintiff's Fourth Amendment claims cannot be dismissed based on *Heck.*

**C. Other Constitutional Claims**

Plaintiff also asserts that Defendants, several of whom are private actors, conspired to violate his constitutional rights. A plaintiff asserting constitutional violations under Section 1983 must allege a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Court may dismiss a complaint that fails to allege *state* action. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975). In addition, to obtain damages, Plaintiff must allege facts showing each Defendant's personal involvement in violating his constitutional rights. *See Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").

To state a Section 1983 conspiracy claim, a plaintiff must allege facts showing (i) an agreement between two or more state actors or between a state actor and a private entity (ii) to act in concert to inflict an unconstitutional injury, and (iii) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *see also Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993) ("A private individual may be subject to liability under [Section 1983] if he or she willfully collaborated with an official state actor in the deprivation of the federal right ."); *Deskovic v. City of Peekskill,* 894 F.Supp.2d 443, 465 (S.D.N.Y.2012).

**\*6** Conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that detailed fact pleading

is required. *Bender v. City of New York,* No. 09 Civ. 3286(BSJ), 2011 WL 4344203, at \*1 (S.D.N.Y. Sept.14, 2011) (quoting *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981)). "Assertions lacking factual foundation ... are merely conclusory allegations and are insufficient to state a claim." *See Jackson v. County of Rockland,* 450 F. App'x 15, 19 (2d Cir.2011) (summary order) (quoting *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir.2006)); *Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir.2011) (finding that plaintiff's allegations of conspiracy were "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the coconspirators."); *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (dismissing complaint in part because claims were "unsupported, speculative, and conclusory" (internal quotation marks omitted)).

Plaintiff wholly fails to allege specific facts that would plausibly show the existence of an agreement or concerted action among the named Defendants. The Complaint does not describe either the nature of the purported agreement or the specific acts in which Defendants allegedly engaged in furtherance of an agreement. *See Martinez v. Queens Cty. Dist. Atty.,* No. 12 Civ. 6262(RRM), 2014 WL 1011054, at \*15 (E.D.N.Y. Mar.17, 2014) (dismissing Section 1983 conspiracy claims against Verizon N.Y. and T–Mobile). Indeed, Plaintiff's allegations against private defendants consist primarily of conclusory accusations that they provided law enforcement with records in response to allegedly invalid court orders, subpoenas, or warrants, or that they illegally ("without proper legal authority") provided access to his account information.

Mere compliance with court orders does not constitute action under color of state law. *See, e.g., Martinez,* 2014 WL 1011054, at \*15 ("Plaintiff's bald assertions that there was a conspiracy between state actors and Verizon N.Y. and T–Mobile to illegally wiretap him, without more, are insufficient to plausibly allege that these private defendants were acting under the color of state law."); *Barroga–Hayes v. Susan D. Settenbrino, P.C.,* No. 10 Civ. 5298(RJD), 2012 WL 1118194, at \*8 (E.D.N.Y. Mar.30, 2012) (noting that *pro se* plaintiff "suggests erroneously that the issuance of and compliance with" a subpoena transforms private defendants into state actors); *Melnitzky v. HSBC Bank USA,* No. 06 Civ. 13526(JGK), 2007 WL 1159639, at \*9 (S.D.N.Y. Apr.18, 2007). Moreover, there are no allegations suggesting that the private defendants knew the subpoenas or other court orders were invalid or had reason to question their validity.

*Cf. Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("A search warrant that has been issued by a neutral magistrate is presumptively valid."). Accordingly, these allegations do not state a claim for relief.

**\*7** Additionally, Plaintiff's allegations that the private defendants failed to train their employees properly regarding the release of customer records do not state a claim. As just discussed, Plaintiff alleges no facts suggesting the private defendants had reason to question the legality of the court orders under which Plaintiff's information was released. In any event, failure to train is a theory of municipal liability under Section 1983, not of private liability; a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Monell v. Dep't of Soc. Serus.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There is no analogous failure-to-train theory that would apply to the private defendants and, in any event, Plaintiff has failed to allege facts showing that the private Defendants violated his constitutional rights by releasing his data.

**D. Statutory Claims**

Plaintiff asserts claims for civil damages under federal statutes governing access to wire, oral, and electronic communications. But the cited statutes contain defenses for releasing records pursuant to a court order and/or explicitly provide that such releases do not state a cause of action. The Federal Wiretap Act, 18 U.S.C. § 2520, contains an exception for service providers that assist law enforcement pursuant to a court order, *id.* § 2511(2)(a)(ii), and also provides that a good faith reliance on a court order is a complete defense to civil or criminal charges, *id.* § 2520(d)(1). Both the DPPA, 18 U.S.C. § 2721(b)(1), and the RFPA, 12 U.S.C. § 3402, contain law enforcement exceptions, and the ECPA, 18 U.S.C. § 2703(c)(1), provides that a governmental entity seeking information from a service provider must comply with specific legal process or obtain the subscriber's consent.

Plaintiff alleges not that the private Defendants turned material over without a warrant or subpoena, but that they did so in response to allegedly invalid court orders. However, Plaintiff fails to provide any facts suggesting that the private Defendants either violated the cited statutes or would not be

protected under the statutory defenses. Without supporting facts, these allegations do not state a claim for relief.

**E. State Law Claims**

Plaintiff purports to assert state law claims under both the Court's diversity jurisdiction, 28 U.S.C. § 1332, and its supplemental jurisdiction, 28 U.S.C. § 1367. To establish diversity jurisdiction under Section 1332, the plaintiff must allege to a "reasonable probability," that the claim is in excess of the sum or value of $75,000—the statutory jurisdictional amount. *See Colavito v. N.Y. Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir.2006). Moreover, diversity of citizenship must be complete; in other words, "no plaintiff and no defendant [may be] citizens of the same State." *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

**\*8** For purposes of determining the Court's diversity of citizenship subject matter jurisdiction, a prisoner retains his pre-incarceration domicile, rather than establishing a new domicile where he is incarcerated. *See LoCurto v. LoCurto,* No. 07 Civ. 8238(NRB), 2008 WL 4410091, at \*5 (S.D.N.Y. Sept.25, 2008); *Poucher v. Intercounty Appliance Corp.,* 336 F.Supp.2d 251, 253 (E.D.N.Y.2004); *Waste Recovery Corp. v. Mahler,* 566 F.Supp. 1466, 1468 (S.D.N.Y.1983). *But see Housand v. Heiman,* 594 F.2d 923, 926 n. 5 (2d Cir.1979) (*per curiam* ) (noting prisoner is allowed an opportunity to show that he has satisfied the prerequisites for establishing domicile in his place of incarceration).

Plaintiff is currently incarcerated in Connecticut, but it is not clear where Plaintiff was domiciled before his incarceration or that he intended to change his domicile. All Defendants appear to be citizens of New York. If Plaintiff was domiciled in New York before his incarceration, and he has not manifested an intention to change his domicile, diversity is lacking in this case.

The Court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state-law claims where no federal claims remained). Plaintiff's original pleading fails to state federal claims against the private Defendants. Should Plaintiff's amended complaint fail to remedy the deficiencies discussed in this Order, the Court may decline to exercise its supplemental jurisdiction over any state law claims against

the private Defendants and dismiss them from the action entirely.

## F. Motion to Proceed Pseudonymously

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties[.]" "This requirement ... serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 188–89 (2d Cir.2008). The use of a pseudonym by a plaintiff in civil litigation "must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. When determining whether a litigant can proceed under a pseudonym, the following nonexhaustive list of factors should be considered:

> [i] whether the litigation involves matters that are highly sensitive and [of a] personal nature[;][ii] whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent nonparties[;][iii] whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity[;][iv] whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age[;][v] whether the suit is challenging the actions of the government or that of private parties[;][vi] whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court[;] [vii] whether the plaintiff's identity has thus far been kept confidential[;] [viii] whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity[;]

> [ix] whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities[;] and [x] whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

**\*9** *Id.* at 190 (internal citations and quotation marks omitted (alterations in original). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests[.]" *Id.*

Plaintiff's conviction is a matter of public record. While arguments may be made as to some of the factors mentioned above, figuratively speaking, the cat is already out of the bag. Moreover, Plaintiff asserts in the Complaint that government officials and entities violated his rights and contributed to an unjust conviction and a miscarriage of justice. Such allegations are a matter of public concern. Accordingly, the Court concludes that the circumstances here are not sufficiently extraordinary to outweigh the presumption in favor of public access. Therefore, Plaintiff's motion is denied, and the Clerk of Court is directed to terminate docket entry 6. [5]

## G. Leave to Amend

Plaintiff is granted leave to amend the Complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. The naming of John Doe defendants does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. Plaintiff's amended complaint will completely replace, not supplement, the Complaint; therefore, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The motion to proceed under a pseudonym is denied without prejudice, and the Clerk of Court is directed to terminate docket entry 6. Plaintiff is directed to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 15–CV–1800 (KPF). An Amended Complaint for Civil Rights is attached to this order for Plaintiff's convenience. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*10**  SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 4164377

### Footnotes

1  Plaintiff filed this complaint in the United States District Court for the Eastern District of New York; that court transferred the matter here. *See Corley v. Vance,* No. 15 Civ. 232 (E.D.N.Y. Mar. 6, 2015).

2  On April 21, 2015, following the death of United States District Judge Robert P. Patterson, Jr., the criminal case was reassigned to United States District Judge Alison Nathan. Pending before her is Plaintiff's *pro se* motion for bail pending appeal.

3  Transcripts filed in Plaintiff's criminal case indicate that the New York County District Attorney's Office obtained Plaintiff's records pursuant to court orders and gave the material to federal prosecutors before the state charges were dismissed. *See United States v. Corley,* No. 13 Cr. 48 (S.D.N.Y. Feb. 28, 2013) (Transcript of Pretrial Conference, Dkt. # 5 at 3; Trial testimony, Dkt. # 43 at 29–32 and 44–45, Dkt. # 45 at 14).

4  A review of the criminal docket reveals no litigation regarding the validity of warrants or subpoenas or the admissibility of evidence obtained pursuant to court orders.

5  On May 19, 2015, before the Court ruled on Plaintiff's motion to proceed under a pseudonym, Plaintiff submitted a "complaint supplement" containing personal data. (Dkt.# 13). The Clerk of Court docketed that document as "court view only." The Court will either consider restricting access to individual documents or revisit this issue as needed.

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Magnotta v. Putnam County Sheriff, S.D.N.Y., February 24, 2014

2007 WL 2154196

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Sean CLAYTON, Plaintiff,

v.

CITY OF POUGHKEEPSIE, Chief Ronald Knapp, individually and in his capacity as Chief of the City of Poughkeepsie Police Department, George Camacho, Joseph Ciardi, Sean McCarthy, Anthony Morrone, Greg McGinley, Michael Longbard, Sgt. Remsen, Edward Freer, and Police Officer Doe, the fictitious name for the City of Poughkeepsie Police Officer(s) who assisted in the search and seizure of claimant on or about March 26, 2005, each individually and in their respective capacities as members of the City of Poughkeepsie Police Dept., Defendants.

No. 06 Civ.4881 SCR.

|

June 21, 2007.

DECISION AND ORDER

ROBINSON, J.

I. Background

A. Procedural history

**\*1** Sean Clayton (the "Plaintiff") brought suit on June 23, 2006 against the City of Poughkeepsie, nine named members of the City of Poughkeepsie Police Department in their official and individual capacities, and "Police Officer Doe" (collectively "Defendants"). Plaintiff alleges violations of 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments of the United States Constitution; he also makes several related state law claims, all of which arise out of an incident on March 26, 2005 in the City of Poughkeepsie. In accordance with this Court's Individual Practice Rules, Defendants filed a partial motion to dismiss many of the claims in the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. For the reasons discussed below,

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

B. Facts

According to the facts set forth in the Complaint, on March 26, 2005 at approximately 10:00 p.m., Plaintiff, whose license to operate a motor vehicle in New York State was suspended at the time, was driving in the City of Poughkeepsie when his vehicle was stopped by Defendants Camacho, Ciardi, McCarthy, Morrone, McGinley and Longbard (hereinafter the "Officer Defendants"). Compl. at ¶¶ 24, 27-28. The Officer Defendants performed a search of the vehicle and of Plaintiff's person, but did not immediately discover any contraband at the scene of the vehicle stop; they then took Plaintiff into custody and brought him to police headquarters. *Id.* at ¶¶ 25-26. At the time, Plaintiff was under the supervision of the New York State Division of Parole, and did not have any outstanding warrants for his arrest. *Id.* at ¶¶ 28-31.

At police headquarters, Defendants conducted a pat frisk of Plaintiff, which did not immediately uncover any contraband; Plaintiff was then instructed by Defendant Camacho to remove his clothes, lift his scrotum, and spread his buttocks for a cavity search. *Id.* at ¶¶ 33-34, 36. At that time, the Officer Defendants, along with Defendants Remsen and Freer, "reach[ed] through [Plaintiff's] anus into his rectum" where they recovered a quantity of cocaine. *Id.* at ¶¶ 37, 39. Plaintiff alleges that he "suffered severe injuries, including but not limited to bleeding, swelling, pain and suffering and related sequelae, to his anus and rectum." *Id.* at ¶ 38.

Plaintiff was charged with criminal possession of a controlled substance based on the cocaine recovered incident to this search. *Id.* at ¶ 39. As part of pre-trial proceedings in state court Plaintiff moved to suppress the cocaine, but that motion was denied on or about December 19, 2005. *Id.* at ¶ 40. Plaintiff was convicted, upon a guilty plea, of criminal possession of a controlled substance in the fifth degree, and is currently serving a sentence of two to four years incarceration in a New York State prison. *Id.* at ¶ 10. During his plea allocution, Plaintiff's criminal defense lawyer stated that the state court judge's decision on the motion to suppress the evidence recovered from the search now at issue here was "dispositive" of the criminal case. *See* Def. Ex. D at 2. According to Plaintiff's present (civil) counsel, Plaintiff's conviction is presently pending on appeal to the New York State Supreme Court Appellate Division, Second Department. Pl. Mem. of Law at 2.

**\*2** While not all of the claims in the Complaint are stated with precision, this Court reads the Complaint as making the following claims: [1]

(1) unreasonable search and seizure and excessive use of force by government actors, pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution;

    (2) failure to protect Plaintiff from unreasonable search and seizure and excessive use of force by government actors, pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution;

    (3) conspiracy to violate Plaintiff's federal civil rights pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; [2]

(4) a federal claim of municipal liability for maintaining de facto policies, practices, and customs exhibiting deliberate indifference to the federal constitutional rights of citizens;

    (5) a state law claim of gross negligence and negligence in subjecting Plaintiff to unwanted and unwarranted physical contact and unlawful search and seizure, and failing to protect Plaintiff against the violation of his constitutional rights;

    (6) a state law claim of negligent hiring, training and supervision;

    (7) a state law claim of assault and battery;

    (8) a state law claim of intentional infliction of emotional distress;

    (9) a claim under the New York State Constitution for violation of Plaintiff's right to be free from unreasonable seizure of his person and property, to be free from the use of excessive force by government actors, and to equal protection under the law.

The Complaint specifically alleges that the "subsequent prosecution and incarceration of Plaintiff were a direct and proximate result of the aforementioned violations of rights secured by the United States Constitution and of the wrongful acts and omissions perpetuated by all Defendants." *Id.* at ¶ 43.

## II. Analysis

### A. Standard of review

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a district court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). At this stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotations omitted). When considering a motion to dismiss for failure to state a claim, a district court may consider the facts as set forth in the complaint, documents attached to the complaint, and any other documents incorporated in the complaint by reference. *Kramer v. Time Warner,* Inc., 937 F.2d 767, 773 (2d Cir.1991).

In the interest of judicial economy, this Court will address all of Plaintiff's supplemental claims under New York State law. *See* 28 U.S.C. § 1367.

### B. Claims that Defendants concede should remain

**\*3** As a threshold matter, Defendants in their motion papers concede that Plaintiff has articulated facts sufficient to support a claim for excessive use of force pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. Def. Mem. of Law at 4. Defendants also do not contest the portion of Plaintiff's second claim that alleges a failure to protect him against the excessive use of force. Further, Defendants concede that Plaintiff has stated a claim for assault and battery under state law. Def. Mem. of Law at 6. Thus, the portions of Plaintiff's first and second causes of action that claim excessive use of force can be maintained; in addition, Plaintiff's seventh cause of action can also be maintained.

### C. Claims involving allegation of unreasonable search and seizure

At least five of Plaintiff's causes of action are predicated, in part, on Plaintiff's claim that the search and seizure of Plaintiff on March 26, 2005 was unreasonable and consequently that such search and seizure violated his civil rights.

The Supreme Court has held that in order to recover damages under 42 U.S.C. § 1983 for "harm caused by actions whose

unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Indeed, a state prisoner in these circumstances "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. The *Heck* rule only applies, however, in situations where "establishing the basis for the damages claim *necessarily demonstrates* the invalidity of the conviction." *Id.* at 481-82 (emphasis added); *see McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir.2007).

In a footnote, the *Heck* Court described a hypothetical 42 U.S .C. § 1983 suit based on an unreasonable search as an example of a suit that could potentially survive under the *Heck* rule:

> "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."

*Heck,* 512 U.S. at 487 n. 7 (internal citations omitted). In a very recent interpretation of this exact language, the Second Circuit explained that "a § 1983 action that, at most, increases the *likelihood* that a plaintiff will eventually be able to overturn a still outstanding conviction, but which does not go so far as to *necessarily* demonstrate the conviction's validity" may still proceed. *McKithen,* 481 F.3d at 102 (emphasis in original).

**\*4** In the case at bar, we must apply the *Heck* rule and dismiss any of Plaintiff's allegations concerning the allegedly unreasonable search and seizure. First, it is undisputed that Plaintiff's conviction for criminal possession of a controlled

substance has not been invalidated in any way by any state or federal court or other state or federal official. Second, it is this Court's view that any decision-by the Court or by a jury-in this case holding that the initial seizure of Plaintiff or the search of Plaintiff's person and the subsequent seizure of narcotics from him were unconstitutional would necessarily call into question the validity of Plaintiff's criminal conviction. This is precisely the type of result that *Heck* was designed to prevent. Plaintiff even appears to concede this point in his memorandum of law, where he argues that "the prohibition against the unlawful search and seizure branch of his § 1983 action shall be lifted" only if he succeeds on his criminal appeal. Pl. Mem. of Law at 3.

While the above-cited footnote from *Heck* provides a clear roadmap for how a suit for damages attributable to an allegedly unreasonable search *may* be allowed to continue even in light of the *Heck* test, Plaintiff's claims here are distinguishable from the situation contemplated there. The doctrines of independent source, inevitable discovery, and harmless error discussed in *Heck* are not applicable, where, as here, the entire evidentiary basis for the charged offense derives from a single episode involving a single search that is now being questioned as part of a § 1983 action. Indeed, it was so patently obvious to Plaintiff's criminal defense attorney that the entire case turned on his motion to suppress evidence from the search at issue that he referred to that motion as "dispositive," and his client (the Plaintiff) pled guilty just weeks after that motion was denied. Without the search and seizure at issue, there would undoubtedly not have been any criminal charge filed against Plaintiff for possession of these narcotics. Accordingly, given that the exception described in *Heck* is not applicable here, Plaintiff's purported § 1983 claims based on the allegedly unreasonable search and seizure described above are hereby dismissed.

Plaintiff suggests that rather than dismiss these causes of action based on *Heck,* the Court should instead abstain from deciding these issues until the resolution of his criminal appeal in state court. Abstention, however, is not appropriate. As discussed above, *Heck* counsels that Plaintiff "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck,* 512 U.S. at 489. Thus, Plaintiff has no valid federal claim as to his allegations of unreasonable search and seizure at this point in time. For whatever reason, Plaintiff elected to attempt to bring these § 1983 claims while his state court criminal appeal was still pending; to allow abstention under these

circumstances could potentially create a tremendous backlog of stayed § 1983 actions in the federal courts, all waiting to move forward or to be dismissed pending the resolution of state court criminal appeals. A refusal to abstain in cases like this does not prejudice plaintiffs from a statute of limitations standpoint, *see id.,* and is certainly in the best interests of judicial efficiency in the federal courts.

**\*5** Given that the *Heck* doctrine prevents a § 1983 cause of action premised on the allegedly unreasonable search and seizure at this point, it would frustrate the purposes of judicial economy, as well as the intent of *Heck,* to allow state claims based on the exact same allegations to proceed in federal court. Therefore, for the same reasons described above, this Court will also dismiss any state law claims that rely on Plaintiff's allegation of unreasonable search and seizure.

Accordingly, Defendants' motion to dismiss the portions of the first, second, fourth, fifth, and ninth causes of action that are predicated on Plaintiff's allegation of unreasonable search and seizure is hereby GRANTED.

### D. Conspiracy
To state a claim for conspiracy to violate § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999).

Plaintiff's Complaint here does not allege any agreement on the part of Defendants to act in concert to inflict an unconstitutional injury; this cause of action must therefore be dismissed in its entirety. In his third claim, Plaintiff states in conclusory fashion that Defendants are members of a conspiracy and that they engaged in activities in furtherance of advancing the conspiracy. Compl. at ¶ 60. At no point in the Complaint, however, does Plaintiff discuss any relevant agreement among the alleged conspirators, or which overt acts they allegedly took in furtherance of the conspiracy. Aside from the conclusory language described above, Plaintiff's only reference to the purported conspiracy in the Complaint indicates that *after* the events of March 26, 2005, the Officer Defendants "subsequently conspired to conceal the truth as to the circumstances of the incident." *Id.* at ¶ 2. Simply stated, Plaintiff's conspiracy claim fails even to "provide some details of time and place and the alleged effect of the conspiracy." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 513 (S.D.N.Y.2003) (citing *Dwares v. City*

*of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Accordingly, Defendants' motion to dismiss the third cause of action is GRANTED.

### E. Municipal liability
Plaintiff's fourth cause of action alleges that Defendant City of Poughkeepsie is liable because of certain *de facto* policies of its police department. Municipalities may be held liable under 42 U.S.C. § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, 694 (1978); *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998). To set forth a cognizable claim for municipal liability in such an action, a plaintiff must plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). While a plaintiff need not "show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo,* 141 F.3d at 61 (internal citations omitted). The Second Circuit has held that "the inference that a policy existed may ... be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights." *Id.* at 61-62.

**\*6** Defendants' only argument in favor of dismissing this cause of action is that there can be no claim for municipal liability for an unconstitutional policy or practice when there is no underlying claim for unconstitutional action. This position, however, is fundamentally flawed, given that Defendants' own submissions expressly concede that Plaintiff's 42 U.S.C. § 1983 claim for excessive force must be allowed to proceed. The Complaint does in fact allege that Defendants had knowledge of previous incidents of assault and brutality and acted with deliberate indifference by failing to address such incidents. Compl. at ¶ 3. Based on this Decision and Order, Plaintiff no longer has a constitutional claim regarding allegedly unreasonable searches and seizures; as such, Plaintiff cannot maintain a claim for municipal liability as it pertains to any alleged policies or procedures surrounding searches and seizures. To the extent that Plaintiff's fourth cause of action is directed toward issues

pertaining to excessive force, however, Defendants' motion to dismiss is DENIED.

### F. Gross negligence and negligence

The only remaining portion of Plaintiff's fifth cause of action for gross negligence and negligence relates to his allegation of unwarranted physical contact and Defendants' failure to protect him from such unwarranted contact. Various federal courts within this circuit have held, however, that under New York State law, "when a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Lalonde v. Bates,* 166 F.Supp.2d 713, 720 (N.D.N.Y.2001) (citing *Naccarato v. Scarselli,* 124 F.Supp.2d 36, 45 (N.D.N.Y.2000); *see also Oliver v. Cuttler,* 968 F.Supp. 83, 92 (E.D.N.Y.1997). Because Plaintiff here has asserted claims of excessive force and assault and battery and pled sufficient facts to support those claims, he cannot additionally argue that the same facts would give rise to a claim for either negligence or gross negligence. Accordingly, Defendants' fifth cause of action must be dismissed in its entirety.

### G. Negligent hiring and intentional infliction of emotional distress

Defendants maintain that this Court should dismiss Plaintiff's sixth and eighth causes of action because they have "no nexus" to Plaintiff's claim for excessive force. This Court, however, views both of these claims as substantially related to the remaining federal excessive force claim, and therefore rejects Defendants' principal argument in support of dismissal.

#### i. Negligent hiring, training, and supervision

To state a claim under New York law for negligent hiring, supervision, and retention, the plaintiff must show that "the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Ehrens v. Lutheran Church-Missouri Synod,* 269 F.Supp.2d 328, 334 (S.D.N.Y.2003). As was the case with Plaintiff's claim for municipal liability, Defendants make no argument in support of dismissing this cause of action other than to suggest there can be no claim here because there is no underlying claim for any civil rights violation. As discussed above, this argument is flawed, given that Plaintiff's claim for excessive force remains active. In the absence of any other stated basis for dismissal, this Court declines to dismiss this claim at this time.

#### ii. Intentional infliction of emotional distress

**\*7** Under New York law, a claim for IIED requires: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the jury; and (4) severe emotional distress." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). Though the New York Court of Appeals has stated that the IIED standard is "rigorous, and difficult to satisfy." *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122 (1993) (citations omitted), this Court cannot conclude, based on the facts alleged in the Complaint, that Plaintiff could not, as a matter of law, recover damages under this tort theory based on his allegations of excessive force. Despite the rigorous standard, dismissal is not warranted at this time.

### H. State constitutional claims

Plaintiff's ninth and final cause of action purports to raise claims under the New York State Constitution for his right to be free from unreasonable seizure of his person and property and from the excessive use of force by government actors. He also claims a state constitutional right to equal protection under the law. To the extent that the New York State Constitution can be read to support a private right of action for a claim of unreasonable search and seizure, that claim has already been disposed of, as discussed in section II.C, *supra.* Further, even if the New York State Constitution could be read to support a private right of action for an equal protection claim, Plaintiff has set forth no facts whatsoever in this Complaint to suggest any equal protection violation of any sort. Accordingly, that claim is also dismissed.

As to Plaintiff's purported state constitutional claim based on excessive force, various federal courts in this circuit have held that "there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Devito v. Barrant,* No. 03-CV-1927 (DLI) (RLM), 2005 U.S. Dist. LEXIS 22444, \*24 (E.D.N.Y. Aug. 23, 2005) (citing *Flores v. City of Mount Vernon,* 41 F.Supp.2d 439, 446-47 (S.D.N.Y.1999)). Accordingly, because Plaintiff has stated a claim for excessive force pursuant to § 1983, his claim for excessive force under the New York State Constitution cannot lie. Defendants' motion to dismiss the ninth cause of action is GRANTED in its entirety.

### III. Conclusion

For the reasons discussed above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. It is hereby ordered that:

1. Plaintiff's first cause of action is dismissed as it pertains to his allegation of unreasonable search and seizure, but remains active as it pertains to his allegation of excessive use of force.

2. Plaintiff's second cause of action is dismissed as it pertains to his allegation of unreasonable search and seizure, but remains active as it pertains to his allegation of excessive use of force.

   **\*8** 3. Plaintiff's third cause of action is dismissed in its entirety.

4. Plaintiff's fourth cause of action is dismissed as it pertains to his allegation of unreasonable search and seizure, but remains active as it pertains to his allegation of excessive use of force.

5. Plaintiff's fifth cause of action is dismissed in its entirety.

6. Plaintiff's sixth cause of action remains active.

7. Plaintiff's seventh cause of action remains active.

8. Plaintiff's eighth cause of action remains active.

9. Plaintiff's ninth cause of action is dismissed in its entirety.

The Clerk of the Court is directed to terminate docket number 15.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2154196

---

Footnotes

1    Despite the ambiguity of the Complaint in certain respects, this Court can state with certainty that the Complaint does not set forth any claim for false arrest or malicious prosecution-Plaintiff's brief in opposition to the motion to dismiss specifically disclaims such allegations. Pl. Mem. of Law at 3.

2    Given that Plaintiff does not specify which federal civil rights this claim is meant to address, this Court views it as alleging a conspiracy to commit the two violations-unreasonable search and seizure and excessive use of force-alleged in the first claim.

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   6

KeyCite Yellow Flag - Negative Treatment

Distinguished by Hogan v. County of Lewis, N.Y., N.D.N.Y., March 8, 2013

2010 WL 335581

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Erwin JACKSON, Plaintiff,

v.

COUNTY OF NASSAU, Nassau County
Police Department, and Office of the Nassau
County District Attorney, Defendants.

No. 07-CV-245 (JFB)(AKT).
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Erwin Jackson, pro se.

Ralph J. Reissman and Sara A. Wells of the Nassau County Attorney's Office, Mineola, NY, for defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** On January 17, 2007, pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Erwin Jackson ("plaintiff" or "Jackson") brought this action against defendants County of Nassau ("the County"), Nassau County Police Department, and the Office of the Nassau County District Attorney alleging that defendants violated plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Specifically, Jackson claims that his constitutional rights were violated during his pretrial proceedings when police officers allegedly withheld exculpatory evidence, made perjurous statements, and falsely verified felony complaints against plaintiff when they had no personal knowledge of the underlying facts. Jackson further contends that the County of Nassau has a policy of committing these constitutional violations. Jackson also alleges that the County of Nassau has a policy of failing to investigate criminal complaints

regarding these types of violations if they are filed by pretrial detainees or criminal defendants. The defendants now move, jointly, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted.

## I. FACTS

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' respective Rule 56.1 statements of facts. [1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2001). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it. [2]

### A. The Underlying Prosecution

On November 22, 2005, plaintiff Erwin Jackson was arrested by Nassau County police officers for attempted robbery of the Bank of America located in Baldwin, New York, on November 21, 2005. (Defs.' 56.1 Statement ¶ 4.) Plaintiff was brought to the Bellmore police station, where he was questioned about the November 21, 2005 robbery. (Deposition of Irwin Jackson, Defs.' Ex. E (hereinafter "Pl.'s Dep.") at 32-33.) At the station, Jackson was also questioned about other bank robberies. (*Id.* at 34-35.) Plaintiff was arrested and arraigned on November 23, 2005. He was charged for the November 21 robbery and four additional robberies that had occurred in Nassau County on November 13, 2005, October 1, 2005, September 2, 2005, and July 23, 2005. (*Id.* at 40-41; Defs.' 56.1 Statement ¶ 5.) Plaintiff was indicted by a grand jury on thirteen counts on December 19, 2005. (Pl.'s Dep. at 44-45.) In June 2006, a pretrial suppression hearing was held, at which Police Officer Joseph Hughes testified. (*Id.* at 45-46.) Plaintiff proceeded to trial on the charges and, on February 6, 2007, was found guilty on nine counts of Robbery in the First Degree (New York Penal Law 160.15) and one count of Conspiracy in the Fourth Degree (New York Penal Law 105.10). (*Id.* at 53-54.) On July 30, 2008, Jackson was sentenced to fifteen years for each of the nine counts of Robbery in the First Degree, plus one year and four months for Conspiracy in the Fourth Degree. (Defs.'

56.1 ¶ 8.) Jackson's minimum aggregate sentence was set at twenty-five years, eight months and sixteen days. (*Id.* ¶ 9.)

## B. Officer Hughes

**\*2** By letter dated September 17, 2006, while a pretrial detainee, Jackson filed three criminal complaints against Police Officer Joseph Hughes with the Nassau County District Attorney's Criminal Complaint Unit. (*Id.* ¶ 10.) The complaints were based on Officer Hughes's allegedly inconsistent testimony at a pretrial suppression hearing. Jackson alleges that while testifying before the Grand Jury in December 2005, Officer Hughes stated that he observed five black males fleeing a four-door Buick wearing face masks. During a subsequent pretrial hearing on July 10, 2006, plaintiff cross-examined Officer Hughes. At that hearing, Officer Hughes stated that only some of the males he observed were wearing face masks. The testimony at the July 10 pretrial hearing was as follows:

Q: This individual jumps out of the car. This is the individual that you pursued after?

A: Correct. * * *

Q: Did he have mask on? A: No mask.

Q: No mask. You testified in the grand jury that all five of the occupants of that car that fled had masks on?

A: I was incorrect about that. I stated that before.

Q: That information wasn't true?

A: It was incorrect. * * *

Q: You testified they all had masks on. Now, you're saying, you take the mask off one-

A: I believe in that statement. I was describing all the occupants. I said, they all had masks on. I was incorrect. I should have said, some had masks on.

(*Id.* ¶ 12 (citing Ex. AB at 485-86).)

Jackson also claims Officer Hughes made a "punishable false written statement" and committed the crime of "offering a false instrument for filing" by verifying and signing five felony complaints against plaintiff, although Officer Hughes had no personal knowledge of the information contained in those complaints and relied on information provided by other

officers. (*Id.* ¶¶ 13-14.) According to Jackson, during the pretrial hearing and trial of his co-defendant Paul Henry, Officer Hughes testified that it was police procedure for officers to verify and swear to felony complaints even though they lacked knowledge of the underlying facts or crimes alleged therein. (Pl.'s Dep. at 61.) Jackson also alleges that Hughes testified to this at Jackson's own trial on cross-examination. (*Id.* at 61-62.)

On September 21, 2006, Assistant District Attorney ("ADA") Thurer transferred plaintiff's perjury complaint against Officer Hughes to ADA Barbara Kornblau, Chief of the Public Corruption Bureau. (*Id.* ¶ 15.) ADA Kornblau reviewed plaintiff's complaint against Officer Hughes. Because plaintiff's case was still pending and "the issues alleged by plaintiff all pertained to credibility," (Defs.' Ex. K ¶ 6), ADA Kornblau notified Daniel Looney, the ADA prosecuting plaintiff, and plaintiff's attorney, Jeffrey Groder, of plaintiff's claims. The District Attorney's Office later informed Jackson that it also forwarded the case to the Internal Affairs Bureau of the Nassau County Police Department for administrative action at their discretion. (Pl.'s Dep. at 56; Defs.' 56.1 ¶ 16.) After receiving plaintiff's complaint from the District Attorney's Office, the Nassau County Police Department's Internal Affairs Bureau "determined that plaintiff's complaint against Officer Hughes for perjury was unfounded, since plaintiff had been convicted in a jury trial on February 6, 2007." (Defs.' 56.1 ¶ 18.)

## C. Detective Comiskey

**\*3** Jackson also filed criminal complaints against Detective Joseph Comiskey with the Nassau County District Court. (Pl.'s Dep. at 58-59.) According to Jackson, Detective Comiskey committed "official misconduct" and perjury for allegedly failing to provide plaintiff with "exculpatory material" in July 2006 at a pretrial hearing, and for advising the court that he had turned over all of his notes when, according to Jackson, he had not done so. (Defs.' 56.1 ¶ 19.) ADA Steven L. Schwartz, Chief of the Nassau County District Attorney's District Court Bureau, investigated these two complaints against Detective Comiskey, and found the claims unfounded. (*Id.* ¶ 20.) Plaintiff was subsequently informed that the District Attorney's Office declined to prosecute these complaints. (*Id.*) These complaints were also reviewed by ADA Kornblau, who determined that Detective Comiskey's actions were not a crime. (*Id.* ¶ 22.) Subsequently, as she had done with

the complaint against Officer Hughes, she forwarded the complaints to the Nassau County Police Department Internal Affairs Bureau. (*Id.* ¶ 22.) ADA Kornblau also sent a letter to Jeffrey Groder, plaintiff's trial counsel, informing him of plaintiff's allegations, since they pertained to an incident in which Groder was involved. (*Id.*)

### D. The Instant Complaint

Jackson alleges eleven causes of action against the County of Nassau and two of its administrative arms, the Nassau County District Attorney's Office and the Nassau County Police Department, arguing that these entities had unconstitutional policies, practices, and customs that infringed his constitutional rights. Jackson asserts three claims specifically against the County of Nassau. First, he alleges that the County had a policy of failing to discipline its employees for any alleged perjury or cover-ups with respect to evidence. (Compl. at 5; Pl.'s Dep. at 93.) Jackson's second cause of action claims that the County has a policy, practice, procedure and custom of failing to take steps to terminate the unconstitutional practices of "its legal subordinates," defendants Nassau County Police Department and the Nassau County District Attorney's Office. (Compl. at 5; Pl.'s Dep. at 93-94.) Jackson's third cause of action alleges that the County has failed to properly train and supervise its employees with regard to "the proper constitutional and statutory requirements in the exercise of their authority." (Compl. at 5; Pl.'s Dep. at 94.)

Jackson asserts four claims against the Nassau County Police Department. The fourth cause of action in Jackson's complaint alleges that the Nassau County Police Department has a policy that authorizes subordinates to falsely verify and file criminal felony complaints without "knowledge of or knowledge based upon belief" of the underlying facts. (Compl. at 5; Pl.'s Dep. at 95.) The fifth cause of action alleges that the Nassau County Police Department failed to properly train and supervise its employees in the processing of arrestees. (Compl. at 5-6.) Specifically, Jackson contends that, due to inadequate training, employees of the Nassau County Police Department do not realize "that they are not authorized to swear or fill out a felony complaint that they have absolutely no knowledge of." (Pl.'s Dep. at 96.) The sixth cause of action in Jackson's complaint claims that the Nassau County Police Department has an illegal practice or custom that condones and sanctions its employees who commit perjury, which is demonstrated by the fact that plaintiff, a

pretrial criminal defendant, attempted to file criminal charges against the defendants' subordinates, but the defendants took no corrective actions. (*Id.* at 96-97; Compl. at 6.) Jackson's seventh cause of action alleges that the Nassau County Police Department, as a policy maker, has a defective and illegal policy whereby it does not correct or punish wrongdoings, such as those alleged in causes of action numbers four, five, and six. (Compl. at 6; Pl.'s Dep. at 97-98.)

**\*4** Jackson asserts his four final claims against the Nassau County District Attorney's Office. Jackson's eighth cause of action alleges that the Nassau County District Attorney's Office has a history and practice of ignoring criminal defendants' and arrestees' complaints, ignoring evidence of police misconduct, and shielding police officers and other assistant district attorneys from prosecution. (Compl. at 6.) Jackson's ninth cause of action alleges that the Nassau County District Attorney's Office does not give "any credence to pretrial criminal defendants who seek to file and give any credence to pretrial criminal defendants that seek to commence criminal actions in the court against public officials." (*Id.* at 130.) Specifically, plaintiff contends that the Nassau County District Attorney's Office declines to investigate, arrest, and/or prosecute public officials when illegal conduct is alleged by pretrial or criminal defendants. (Compl. at 6-7.) Jackson's tenth cause of action alleges that the Nassau County District Attorney's Office has failed to punish the illegal practices and wrongdoings of their employees and the Nassau County Police Department. (Compl. at 7.) Jackson's eleventh and final cause of action contends that the Nassau County District Attorney's Office has a policy and procedure whereby the district court clerk does not submit or file any claims or complaints against a public official made by criminal defendants. (Compl. at 7.)

### II. PROCEDURAL HISTORY

Jackson filed the complaint in this action on January 17, 2007. The Court granted plaintiff leave to proceed *in forma pauperis* on January 31, 2007. Defendants filed an answer to the complaint on May 23, 2007. On March 14, 2008, plaintiff filed a motion to amend the complaint. This Court denied that motion on February 13, 2009. On May 15, 2009, defendants submitted their motion for summary judgment and provided *pro se* plaintiff with the notice required by Local Civil Rule 56.2. Defendant submitted supplemental papers to their motion on June 5, 2009. Plaintiff submitted opposition papers on May 28, 2009.[3] Defendants filed their

reply to plaintiff's opposition on June 5, 2009. Plaintiff also submitted a motion for sanctions against defendants on June 10, 2009. Defendants submitted their opposition to the motion for sanctions on June 11, 2009. This matter is fully submitted.

## III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*5** Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.' " Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v.*

*Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* --- F.Supp.2d ----, No. 08 Civ. 7371(GEL), 2009 WL 2877604, at \*2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

### A. Proper Defendants

Plaintiff alleges specific causes of action against the Nassau County Police Department and Nassau County District Attorney's Office as defendants. However, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) ("[M]unicipal departments in this State-such as the Clarkstown Police Department-are not amenable to suit, and no claims can lie directly against them."); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101

(E.D.N.Y.1992)) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York." (citations omitted)). Plaintiff's allegations against the Police Department are more properly raised in claims against Nassau County, which plaintiff has also brought in his first, second, and third causes of action. Accordingly, the Nassau County Police Department is dismissed as a defendant.

**\*6** For the same reason, plaintiff cannot bring claims against the Nassau County District Attorney's Office. *See Conte v. County of Nassau,* No. 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at \*1 n. 2 (E.D .N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District Attorneys Office because the entity is an " 'administrative arm[ ]' of the same municipal entity-the County ... and thus lack[s] the capacity to be sued"). Plaintiff's allegations against the District Attorneys Office are more properly brought as claims against Nassau County. Plaintiff has brought substantially the same claims against the District Attorney's Office as he has brought against the County of Nassau. Accordingly, the Nassau Count District Attorney's Office is dismissed as a defendant in this case. [4] Because the plaintiff is proceeding *pro se,* the Court, in its discretion, does not dismiss plaintiff's fourth through eleventh causes of action in their entirety, but rather construes those claims, which are largely duplicative of causes of action one through three, as against the County of Nassau.

### B. Section 1983 Liability

As stated *supra,* Jackson has brought his claims pursuant to Section 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979). [5] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted). Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived Jackson of the rights he asserts.

Although *pro se* plaintiff alleges eleven separate causes of action against the County of Nassau and its administrative arms, at core, the claims alleged by plaintiff in his complaint are as follows: (1) the County of Nassau has a policy or practice of permitting its employees (or employees of its administrative arms) to commit perjury and a policy or practice of failing to discipline its employees who do commit perjury; (2) the County of Nassau has a policy or practice of permitting its police officers to falsely verify criminal complaints; and (3) the County of Nassau has a policy of not investigating, responding to, or prosecuting complaints or cross-criminal complaints of pretrial detainees and criminal defendants that allege crimes and misconduct against police officers and assistant district attorneys. (Plaintiff's Opposition (hereinafter "Opp.") at 14.)

Defendants argue that they are entitled to summary judgment on the grounds that Jackson has failed to provide any evidence that would raise a genuine issue of fact as to municipal liability for any of these claims. As set forth below, the Court agrees. First, plaintiff has failed to provide any evidence that there was an underlying constitutional violation with respect to his arrest and conviction, which would be a necessary element of any municipal liability claim. In fact, under well-settled Supreme Court and Second Circuit precedent, plaintiff's valid conviction precludes him from litigating any of his claims in the instant case because success on such claims (that is, demonstrating his constitutional rights were violated in connection with the investigation and prosecution of his case) would necessarily implicate the unconstitutionality of his conviction. Second, plaintiff has provided absolutely no evidence of an unconstitutional policy or custom of the County of Nassau and, thus, his municipal liability claims against the County cannot survive summary judgment.

### (1) Plaintiff Cannot Demonstrate Violation of His Constitutional Rights

**\*7** To bring a successful Section 1983 claim, plaintiff must first demonstrate that he was injured as a result of a constitutional violation. In the instant case, plaintiff cannot do so. First, Supreme Court precedent prevents a prisoner, like Jackson, from bringing a Section 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence. Second, even assuming this rule did not apply, plaintiff has

presented no evidence of any constitutional violations relating to his conviction.

### a. *Heck v. Humphrey*

As a threshold matter, although not explicitly raised by defendants, plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims.

### i. The *Heck* Rule

In *Heck v. Humphrey,* the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction

> or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Thus, pursuant to *Heck,* courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 703-04 (9th Cir.2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck); cf. Jovanovic v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at * 12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

### ii. Application

**\*8** Here, as stated *supra,* Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for municipal liability,

because a plaintiff bringing such claims must demonstrate a constitutional violation in connection with his conviction, and a successful result in this case on any one of plaintiff's claims would bear on the validity of that underlying conviction.

Indeed, *Heck's* application to the instant matter is straightforward. Plaintiff's complaint claims that he was "subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony." (Compl. ¶ 9.) Plaintiff also contends that during his pretrial hearings there was "late disclosure of [exculpatory] material." (*Id.* ¶ 11.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's assertions of perjury, withheld evidence, and falsely sworn documents during his trial by police officers do necessarily implicate the validity of his conviction and are thus barred by the *Heck* rule. [6] *See, e.g., McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001) ("[Plaintiff] could not assert [municipal liability] claims under § 1983 against the county defendants for holding him in jail because any claim for money damages which, as here, necessarily imputes the invalidity of a conviction, is barred under *Heck v. Humphrey,* 512 U.S. 477, 484, 486-87 (1994), until such time as the conviction is vacated or otherwise invalidated."); *Channer v. Mitchell,* 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' " (quoting *Heck,* 512 U.S. at 487)); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff); *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. [However, s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez,* 2009 WL 1046137, at *7 ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[ .]") (internal quotation marks and citations omitted); *Fernandez*

*v. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he show[ed] that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115-16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

**\*9** The fact that plaintiff is seeking to assert municipal liability claims against the County of Nassau, rather than against individual defendants, does not vitiate the application of the *Heck* rule to plaintiff's claims. To prevail against the County of Nassau in his Section 1983 action under any of these theories, a plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right. *See Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 690-91 (1978). There must be a "direct causal link" between the alleged municipal action and the deprivation of the plaintiff's constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985); *see also Lynch v. Suffolk County Police Dep't,* No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009) ("In order to prevail on a claim against a municipality under *Monell,* a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.' " (citations omitted)). In the instant case, because the Court finds as a matter of law on summary judgment that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants, *see supra,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983. [7] *See, e.g., Lynch,* 2009 WL 3287565, at *2 ("Insofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct in the trial that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction or imprisonment' and is barred by *Heck,* 51 U.S. at 486." (alteration in original)); *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *accord Vippolis,* 768

F.2d at 44 ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *see also Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir.2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims.").

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a claim because the *Heck* rule, as a matter of law, prevents plaintiff from demonstrating a violation of his constitutional rights, which is a necessary predicate to any municipal liability claim pursuant to Section 1983.

### b. No Evidence of Violation of Plaintiff's Constitutional Rights

**\*10** Moreover, even assuming that the validity of plaintiff's underlying conviction was not implicated by his claim that the County of Nassau had a policy of ignoring criminal complaints filed by pretrial detainees and criminal defendants, he has presented no evidence to support his contention that the County did not investigate his claims. Thus, because there is no evidence from which a rational jury could find a violation of his constitutional rights, there is no predicate for his municipal liability claim.

The only forms of evidence offered by plaintiff on this issue are bald assertions and the fact that the County did not prosecute Officer Hughes or Detective Comiskey for their alleged misconduct in relation to plaintiff's trial. Plaintiff's exhibits consist merely of copies of the letters and complaints that he filed with Nassau County entities. Plaintiff presents no evidence to contradict the evidence put forth by defendants, which demonstrates that plaintiff's complaints were investigated. In two affidavits submitted by ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, she asserts that she personally investigated plaintiff's complaints against the officers. (*See* Defs.' Ex. K, X.) According to ADA Kornblau's affidavit, upon investigating Jackson's complaints, "[it] was clear from the minutes that [Jackson's] criminal attorney raised

the issue of the failure to turn over *Rosario* material to the trial court, which is the proper venue for such an allegation." (Defs.' Ex. K ¶ 4.) Subsequently, ADA Kornblau determined that the remainder of plaintiff's claims were unfounded, and declined to prosecute the matter. (*See id.* ¶ 4 ("Subsequent to reviewing Jackson's complaint and after determining that the [complaint] did not allege conduct which constituted a crime, I referred the matter to the Internal Affairs Bureau of the Nassau County Police Department ...."); *id.* ¶ 6 ("In view of the fact that the trial of this case was still pending, and the issues alleged by [Jackson] all pertained to credibility, I notified Daniel Looney, the Assistant District Attorney assigned to Jackson's prosecution, as well as defense counsel, Jeffrey Groder, of Jackson's claims. I also forwarded Jackson's complaint to the Internal Affairs Bureau of the Nassau County Police Department for whatever administrative action they deemed necessary.").) In a separate affidavit, ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that he personally investigated plaintiff's proposed accusatory instruments and found them to be unfounded; accordingly, they were not prosecuted. (Defs.' Ex. Q ¶ 9.) [8]

Here, as in *Staley v. Grady,* 371 F.Supp.2d 411 (S.D.N.Y.2005), "[s]imply because defendants disagreed with plaintiff as to the merits of the proposed [complaint] and chose not to prosecute the same, does not give rise to an equal protection violation." *Id.* at 417. Here, too, the Nassau County District Attorney's Office received Jackson's criminal complaints, reviewed and investigated them, and declined to prosecute them based upon the conclusion that the complaints were without merit. (*See* Defs.' Exs. K, Q.)

**\*11** In short, due to plaintiff's inability to set forth any evidence from which a rational jury could find a deprivation of his constitutional rights, plaintiff's *Monell* claims against the County of Nassau cannot survive summary judgment.

### (2) Plaintiff Has Set Forth No Evidence to Support a *Monell* Claim

Even assuming *arguendo* that plaintiff had put forth evidence to create a genuine issue of fact on whether his constitutional rights were violated, his municipal liability claims still cannot survive summary judgment because there is no evidence of a policy, practice or custom to support a finding by a rational jury of municipal liability under *Monell.*

### i. Applicable Standard

Municipalities cannot be held vicariously liable for the actions of an employee under § 1983. *Monell,* 463 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a muncipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.' " *Abreu v. City of N.Y.,* No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at \*11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell, 436 U.S. at 690*) (alteration in original). " '[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers ." *City of Canton, 489 U.S. at 389* (quoting *Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986)*). Thus, an individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit A uth ., 941 F.2d 119, 123 (2d Cir.1991).* However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Caidor v. M & T Bank,* No. 05-CV-297 (FSJ), 2006 U.S. Dist. LEXIS 22980, at \*35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Grifin-Nolan v. Providence Wash. Ins. Co.,* No. 04-CV-1453 (FJS), 2005 U.S. Dist. LEXIS 12902, at \*10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993)).

### ii. Application

Even if plaintiff could prove that his constitutional rights were violated, whether at trial or by the subsequent failure to prosecute his criminal complaint for the actions by municipal actors at his trial, this is not sufficient to demonstrate a policy or custom by the County of Nassau. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti,* 941 F.2d at 123; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *McAllister v. N.Y.C. Police Dep't,* 49 F.Supp.2d 688, 706 (S.D.N.Y.1999) (same); *Palmer v. City of Yonkers,* 22 F.Supp.2d 283, 290 (S.D.N.Y.1998) ("[T]he court will not infer the existence of a municipal policy from a single incident."). As discussed *supra,* " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra,* 48 F.3d at 685 (quoting *Dwares, 985 F.2d at 100*). [9]

\*12 Plaintiff's complaint, statements at his deposition, and opposition papers to defendants' motion for summary judgment contain vague allegations regarding the existence of a policy or procedure by the County of Nassau of refusing to investigate criminal complaints of pretrial detainees and criminal defendants. (*E.g.,* Opp. at 5-6 ("Plaintiff also stated that he never received any response or letters of acknowledgment from either office though he wrote numerous letters inquiring about the status of his complaints and criminal charges."); Opp. at 6 ("The complaints were never investigated and plaintiff never received any response."); Opp. at 7 ("During the deposition plaintiff continuously testified to the fact that no one ever investigated nor responded to his complaints and grievances.").) These conclusory allegations as to the existence of a policy or custom are insufficient to withstand summary judgment. *See Bishop v. Toys "R" Us-NY, LLC,* No. 04 Civ. 9403(PKC), 2009 WL 440434, at \*4 (S.D.N.Y. Feb. 19, 2009) ("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995)). Indeed, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Id .* (citing *Matsushita,* 475 U.S. 574, 587 (1986)); Order, *McCrary v. County of Nassau,* No. 06 CV 4982(SJF)(ARL) (E.D.N.Y. Sept. 22, 2008) ("Magistrate Judge Lindsay properly found

that [p]laintiff had proffered no evidence to support his assertion that a custom, policy and/or practice, which precludes the consideration of criminal charges brought by an accused against police officers and assistant district attorneys, existed" when plaintiff merely asserted that a police officer was "aware of alleged police misconduct regarding Plaintiff's apprehension, [the] affidavits in support of County Defendants' summary judgment motion were not sufficiently detailed, and that there was no record of any investigation having been conducted by [County Defendants] in regards to the [complaints]"). Plaintiff has presented no actual evidence of a policy or custom whereby the County would decline to review the criminal complaints of pretrial detainees or criminal defendants.

The County of Nassau, however, has put forward extensive evidence regarding the policies that it has in place to review criminal complaints filed by all citizens. In two separate affidavits, ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs-including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states that "[e]ach criminal complaint is afforded individual attention and investigation ... [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7.)

 **\*13** The County of Nassau has also submitted evidence that the system utilized by the Nassau County District Attorney's Office for examining criminal complaints filed by private citizens does not differentiate between complaints based on the individual who files the complaint. ADA Kornblau explains that:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").) An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:

> All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminalityand, if appropriate, any

case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau. If the allegations in a proposed accusatory instrument are determined to be unfounded, I send a letter to the Associate Court Clerk stating that the District Attorney's Office has declined to prosecute the matter.... Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau.

**\*14**  (Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

Nor has plaintiff presented evidence of a policy or custom of committing perjury, withholding evidence, or falsely verifying criminal complaints. Plaintiff has merely asserted that "he can testify based upon personal knowledge to the undisputed facts and that he has credible witnesses and documental evidence to support said factual claims." (Opp. at 11.) Plaintiff has not alleged with specificity other instances of perjury, withheld evidence, or falsified complaints, nor has he presented any other evidence of police officers' commission of perjury, withholding of evidence, or filing of falsely sworn complaints. The County of Nassau, by contrast, has put forward evidence regarding its arrest processing procedures and arrest records. (*See* Defs.' Ex. Z.) Nowhere in the County's arrest policies is false verification of criminal complaints, withholding of evidence, or perjury authorized. Furthermore, the "collective knowledge doctrine" or "fellow officer rule" permits arresting officers to rely upon other law enforcement officers' knowledge to justify probable cause to arrest. *See Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir.2003) ( [F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.' "); *Stokes v. City of New York,* No 05-CV-0007 (JFB)

(MDG), 2007 U.S. Dist. LEXIS 32787, at \*17 (E.D.N.Y. May 3, 2007) ("[U]nder the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation"); *Phelps v. City of New York,* No. 04 CIV. 8570(DLC), 2006 U.S. Dist. LEXIS 42926, at \*9-10 (S.D.N.Y. June 29, 2006) ("The rationale behind the [collective knowledge] doctrine is that in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates. Although the doctrine is typically used to establish probable cause for the purpose of admitting evidence at trial, it is equally applicable here. As the Supreme Court has recognized, police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly." (internal quotations and citations omitted)). Accordingly, it is not improper for an officer to verify a criminal complaint based upon facts learned from another officer and plaintiff has put forth no evidence of a policy, practice, or custom of Nassau County police officers falsifying information in criminal complaints or committing perjury.

Moreover, the County of Nassau has put forward an affidavit from a former Nassau County ADA, who investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.) In the face of this undisputed evidence of the County prosecuting perjury when it is uncovered, plaintiff has not identified any specific instances of police officers' commission of perjury that were not prosecuted.

**\*15**  In sum, the undisputed facts demonstrate the following: (1) plaintiff's conviction prevents him from disputing any alleged constitutional violations relating to his trial; (2) defendants did investigate plaintiff's criminal complaints regarding Officer Hughes's and Detective Comiskey's alleged behavior; (3) defendants do have in place policies and procedures whereby criminal complaints filed by private citizens are investigated-even if those citizens are pretrial detainees or criminal defendants; and (4) the County of Nassau does not have a policy or procedure of permitting its employees to commit perjury, to falsely verify criminal complaints, or to withhold exculpatory evidence at trial. In short, plaintiff has failed to provide any factual support for

his conclusory allegations that the defendants have engaged in unconstitutional policies or procedures. Accordingly, defendant's motion for summary judgment is granted.

## C. Motion for Sanctions

The Court has also reviewed plaintiff's motion for sanctions and, for the reasons stated throughout this opinion, finds plaintiff's claims to be without merit. Accordingly, plaintiff's motion for sanctions is also denied. *See S.E. C. v. Shainberg,* 316 F. App'x 1, 2 (2d Cir.2008).

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. Because the Court grants defendants' motion for summary judgment in its entirety, it also denies plaintiff's motion for sanctions against defendant.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 335581

## Footnotes

1   The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Gilani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In plaintiff's opposition papers, he specifically identified those paragraphs of defendants' Rule 56.1 statement with which he agreed that there were no material disputed issues of fact. The Court, in its discretion, thus relies on those paragraphs as equivalent to plaintiff's Rule 56 .1 statement of facts for the purposes of this opinion. In the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will also only deem admitted those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05.

2   Because plaintiff is *pro se,* the Court has independently reviewed plaintiff's deposition testimony. Plaintiff's deposition contains no additional evidence other than plaintiff's speculation and conclusory allegations.

3   Due to delay, it appears that plaintiff's response was not filed with the Court until June 11, 2009.

4   The Court further notes that it has previously denied plaintiff's attempt to amend his complaint to state claims against Lawrence Mulvey, the Commissioner of the Nassau County Police Department, and Kathleen Rice, the Nassau County District Attorney. *See Jackson v. County of Nassau,* No. 07-CV-0245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009).

5   Specifically, Section 1983 provides as follows:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

   42 U.S.C. § 1983.

6   With respect to plaintiff's claim that the County of Nassau has a policy of declining to investigate criminal complaints filed by pretrial detainees and criminal defendants, as discussed *infra,* plaintiff has failed to present any evidence that his claim was not investigated, whereas the County has presented substantial evidence demonstrating that plaintiff's claim was, in fact, investigated. Moreover, the prosecution of plaintiff's criminal complaints against Officer Hughes and Detective

Comiskey would have implicated the validity of his underlying conviction, in contravention of the *Heck* rule. Accordingly, *Heck* can be construed to preclude all of plaintiff's Section 1983 claims.

7   In any event, summary judgment would also be warranted in favor of the County of Nassau because, as discussed *infra,* plaintiff has failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation.

8   The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity. *See, e.g., Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.... This protection extends to the decision to prosecute as well as the decision not to prosecute." (internal quotations and citations omitted)).

9   Plaintiff contends that the persons who violated his constitutional rights were policymakers. (Opp. at 14 ("All of plaintiff's claims were made against the 'policy makers' and not against employees below the policy making level.").) First, as discussed *supra,* plaintiff's claims regarding alleged perjury, withholding of evidence, or falsely verified complaints relating to his trial are barred by *Heck.* In addition, however, plaintiff presents no evidence in support of this argument. Moreover, for purposes of plaintiff's causes of action regarding the failure to investigate his criminal complaints against those persons, plaintiff would need to allege that the persons who allegedly failed to investigate his accusations were policymakers. Plaintiff does not do so. Instead, he acknowledges that the policy maker is District Attorney Kathleen Rice, and the individuals who submitted the defendants' supporting affidavits-those who investigated plaintiff's allegations-are subordinates to the policy maker. (Opp. at 15.) For the reasons contained in our earlier opinion, this Court declines to add District Attorney Rice as a defendant in this action. *See Jackson,* 2009 WL 393640, at *3-5. In light of Jackson's repeated argument that the actions of the Nassau County District Attorney's Office's and Nassau County Police Department's actions were part of a policy, procedure, or custom, the Court interprets his complaint and opposition papers to argue municipal liability based only on a theory of municipal policy, procedure, or custom, and not on a theory of unconstitutional action by a policymaker.

---

**End of Document**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of

procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure. [3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Camparano v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Camparano,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at *22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases). "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

**B. Plaintiff's Motion for Summary Judgment**
Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has nor received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

**C. Amended Complaint**
 **\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave

to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

**III. CONCLUSION**
Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

Footnotes
1    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).
2    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

3    Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

4    Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,

v.

Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

### *MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

### B. Defendants' Motion

**\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

 **\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*[1]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in

Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

#### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to

'deliberate indifference' to the rights of those who come in contact with the municipal employees....” [7] With regard to the second element (causation), a plaintiff must show “a direct causal link” or “an affirmative link” between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the “moving force” behind the deprivation). [8]

**3. Defense of Qualified Immunity**

“Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' “ *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) “whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation”; and (2) “whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted.” *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] “As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,'

the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.” *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This “objective reasonableness” part of the test is met if “officers of reasonable competence could disagree on [the legality of defendant's actions].” *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

> [T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

**III. ANALYSIS**

**A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner**

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13,

2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

#### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

#### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach

the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at \*29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

#### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at \*24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

**4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

**\*10** For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

**5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional

manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

 **\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting

any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

### 7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

 **\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

### C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v.*

*USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at *1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an

amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and

the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute.[24]

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times.[25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department.[26]

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong*

*Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at \* 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti-Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED* in part** and ***DENIED* in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

All Citations

Not Reported in F.Supp.2d, 2012 WL 4052286

## Footnotes

1  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly-*that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

2  *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

3  *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

4  *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

5  *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

6  *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

7  *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

8  *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits

a finding of liability against the City."); *Powell, 2005 WL 3244193, at \*5* ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

9    *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

10   *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11   *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

12   *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

13   Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

14   Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

15   In addition to lacking facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

16   More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

17   More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

18   *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May

19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

**19**  *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

**20**  *Id.*

**21**  *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

**22**  *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**23**  *Jenkins v. Onondaga Sheriffs Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

**24**  *Jenkins v. Onondaga Sheriffs Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order **(**N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

**25**  *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

**26**  *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

---

 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Garcia v. Dutchess County, S.D.N.Y., August 21, 2014

400 Fed.Appx. 592
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Jonathan CROWELL and Samantha
Kilmurray, Plaintiffs–Appellants,

v.

Robert KIRKPATRICK, Michael Gorman, Chuck
Aleck, Peter Dimarino, Defendants–Appellees.
Jeremy Evans, Defendant.

No. 09–4100–cv.
|
Nov. 15, 2010.

**Synopsis**
**Background:** Arrestees brought § 1983 action against police
officers, alleging that officers used excessive force during
their arrest in violation of Fourth Amendment. The United
States District Court for the District of Vermont, Conroy,
United States Magistrate Judge, 667 F.Supp.2d 391,granted
summary judgment for officers. Arrestees appealed.

**Holdings:** The Court of Appeals held that:

[1] officers' use of stun guns on arrestees was objectively
reasonable, and thus did not constitute excessive force, and

[2] officers were entitled to qualified immunity.

Affirmed.

West Headnotes (2)

**[1]** **Arrest**
⚷ Use of force

Police officers' use of stun guns on protestor
arrestees was objectively reasonable, and thus
did not constitute excessive force in violation

of the Fourth Amendment, where arrestees
were actively resisting their arrest at time
officers used stun gun by chaining themselves
to several hundred pound barrel drum, officers
considered and attempted several alternate
means of removing arrestees from property
before resorting to use of stun guns, officers
expressly warned arrestees that they would
use stun guns and that it would be painful,
officers gave arrestees another opportunity
to release themselves from barrels after this
warning, and arrestees were given opportunities
again to release themselves from barrel prior
to subsequent uses of stun guns. U.S.C.A.
Const.Amend. 4.

26 Cases that cite this headnote

**[2]** **Civil Rights**
⚷ Sheriffs, police, and other peace officers

It was not clearly established that police officers
violated Fourth Amendment by using stun
guns on protestor arrestees who had chained
themselves to several-hundred-pound barrel
drum, and thus officers were entitled to qualified
immunity in arrestees' § 1983 excessive-force
action; arrestees could not have been arrested
and removed from scene by more conventional
means, apparently imminent arrival of some
number of arrestees' compatriots added degree
of urgency to need to remove arrestees quickly,
officers attempted other means to effectuate
arrest, and used stun guns only as last resort,
after warning arrestees and giving them last
opportunity to unchain themselves. U.S.C.A.
Const.Amend. 4; 42 U.S.C.A. § 1983.

16 Cases that cite this headnote

**\*593** UPON DUE CONSIDERATION, it is hereby
ORDERED, ADJUDGED, AND DECREED that the
judgment of the district court be AFFIRMED.

**Attorneys and Law Firms**

David C. Sleigh, Sleigh & Williams, St. Johnsbury, VT, for
Plaintiffs–Appellants.

Nancy G. Sheahan, McNeil, Leddy & Sheahan, P.C., Burlington, VT (Kevin J. Coyle, on the brief), for Defendants–Appellees.

PRESENT: DEBRA ANN LIVINGSTON, DENNY CHIN, Circuit Judges, DAVID G. LARIMER, District Judge. *

### SUMMARY ORDER

**\*\*1** Plaintiffs–Appellants Jonathan Crowell and Samantha Kilmurray appeal from a September 14, 2009, order of the District Court of Vermont (Conroy, *Mag. J.*)[1] granting summary judgment to Defendants–Appellees, members of the Brattleboro Police Department (BPD), on the Plaintiffs' action brought under 42 U.S.C. § 1983. *See Crowell v. Kirkpatrick,* 667 F.Supp.2d 391 (2009). Plaintiffs, alleging that Defendants' use of force in effecting their arrest was excessive, challenge the District Court's conclusion both that the use of force was not unreasonable under the Fourth Amendment and that, even if it **\*594** were unreasonable, Defendants were entitled to qualified immunity. We assume the parties' familiarity with the facts and procedural history of the case and the issues on appeal.

This Court "review[s] a grant of summary judgment *de novo,* construing the record in the light most favorable to the non-moving party." *Gilles v. Repicky,* 511 F.3d 239, 243 (2d Cir.2007). "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Assessing whether the use of force to make an arrest is "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The reasonableness inquiry, an objective one, is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[T]he fact finder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004). The balancing must be done with sensitivity to the

factual circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

Qualified immunity is evaluated on the basis of a two-part test. First, we must inquire whether "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, assuming we find that the facts alleged do establish a violation of a constitutional right, we must then "ask whether the right was clearly established." *Id.* The *Saucier* Court emphasized that this second inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.* Further, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir.2004). Moreover, "[e]ven if the right at issue was clearly established in certain respects, ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir.2007). With respect to the appropriate sequence for this inquiry, the Supreme Court has clarified that "while the sequence set forth [in *Saucier]* is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* 555 U.S. 223, ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

**\*\*2** The District Court found both that Defendants' use of force in this case was reasonable and that, assuming *arguendo* it was not, Plaintiffs' rights in this situation were not clearly established. We find that the use of force in these particular circumstances was objectively reasonable and affirm.

In this case, Plaintiffs were arrested for relatively minor crimes of trespass and resisting arrest and were not threatening the safety of any other person with their **\*595** behavior. However, they were actively resisting their arrest at the time they were tased by the officers in this case, having chained themselves to a several hundred pound barrel drum and having refused to free themselves, even though they admitted they were able to release themselves from the barrel at any time throughout the encounter. Plaintiff Kilmurray admits that prior to the officers' use of their tasers, she had asked an acquaintance at the scene to call other members

of their group to return to the property. Moreover, both Plaintiffs admitted that the officers at the scene considered and attempted several alternate means of removing them from the property before resorting to use of their tasers, that the officers expressly warned them that they would be tased and that it would be painful, and that the officers gave them another opportunity to release themselves from the barrel after this warning. Finally, both Plaintiffs were given opportunities again to release themselves from the barrel prior to the subsequent uses of the tasers.

[1] While we do not suggest that the use of a taser to effect an arrest is always, or even often, objectively reasonable, under the circumstances here, even construing the facts in the light most favorable to Plaintiffs, we conclude that it was. Because they had chained themselves to the drum, Plaintiffs could not have been arrested and removed from the scene by more conventional means, and the apparently imminent arrival of some number of their compatriots added a degree of urgency to the need to remove Plaintiffs quickly, before the presence of other protestors made that more difficult to accomplish. The officers attempted to use other means to effectuate the arrest, none of which proved feasible, and used the taser only as a last resort, after warning Plaintiffs and giving them a last opportunity to unchain themselves from the barrel and leave the premises peacefully. Finally, Defendants set the taser on "drive stun" mode, which typically causes temporary, if significant, pain and no permanent injury. *See Brooks v. City of Seattle,* 599 F.3d 1018, 1027 (9th Cir.2010) ("The use of the Taser in drive-stun mode is painful, certainly, but also temporary and localized, without incapacitating muscle contractions or significant lasting injury."), *rehearing en banc granted,* 623 F.3d 911 (9th Cir.2010). Given the totality of those circumstances, it is difficult to see how a rational factfinder could conclude that the officers' actions were anything other than reasonable.

**3 [2] In any event, since the facts alleged, even taken in the light most favorable to the Plaintiffs, do not amount to a constitutional violation, the officers are entitled to qualified immunity. It certainly was not clearly established that the use of force here violated Plaintiffs' constitutional rights under the case law of the Supreme Court or this Circuit. In support of their contention that the officers' actions violated their clearly established constitutional rights, Plaintiffs cite to the Second Circuit's decision in *Amnesty America,* a case involving allegations of the use of excessive force by police officers against abortion clinic protestors who were allegedly "purely passive" in resisting arrest. 361 F.3d at 123. The Court did find the allegations of excessive force in that case sufficient to defeat a motion for summary judgment. *See id. at 124.* However, the plaintiffs there had alleged that the police used "far more force than was necessary, and inflicted severe pain on the demonstrators" in effecting their arrest, *id.* at 118, including claims that they had thrown a protestor face-down on the ground, "ramm[ed] [a protestor's] head into a wall at high speed," and committed several other acts of violence, *id.* at 123. The allegations of violence in that case were both decidedly more serious than the use of a taser here and significantly less clearly directed at **596 the goal of effecting the arrest of the protestors. Another recent Second Circuit case involving claims of the use of excessive force against protestors, *Jones v. Parmley,* 465 F.3d 46 (2d Cir.2006), similarly involved allegations of force that was both significantly greater in degree and less tethered to the goal of effecting an arrest. *See id.* at 52–53. We have found no Second Circuit case clearly establishing that conduct of the type and gravity alleged in this case would violate the Plaintiffs' constitutional rights under the Fourth Amendment.

For these reasons, we hold that the use of force in this case was objectively reasonable, and that, as a result, Defendants did not violate Plaintiffs' Fourth Amendment rights. Moreover, we hold that Defendants are in any event entitled to qualified immunity here. We have considered Plaintiffs' other arguments on appeal and find that they are without merit or moot. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

### All Citations

400 Fed.Appx. 592, 2010 WL 4595545

### Footnotes

*  The Honorable David G. Larimer, of the United States District Court for the Western District of New York, sitting by designation.
1  The parties consented to the exercise of jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c).

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

665 Fed.Appx. 9
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Keagan ALLEN, Plaintiff-Appellant,

v.

Troy ANTAL, Howard Dorner, Thomas
Angell, Esq., David Goodman, Esq., Del
Atwell, Dutchess County Public Defender's
Office, Dutchess County, Steven Levine, Esq.,
Bradford Kendall, Defendants-Appellees,
Steven Rosenblum, Mario Davila, Teresa Burgess,
Lisa Smithwick, Deidre Brown, Defendants.

15-3252-cv
|
1/14/2016

**Synopsis**
**Background:** Arrestee brought § 1983 and § 1985 action
against state police officers, county, county public defender's
office, individual public defenders, and county clerk,
asserting claims arising out of his arrest and prosecution. The
United States District Court for the Southern District of New
York, Nelson S. Román, J., 2014 WL 2526977, granted in part
and denied in part defendants' motions to dismiss, and, 2014
WL 2526913, denied arrestee's motion for reconsideration.
Arrestee appealed.

**Holdings:** The Court of Appeals held that:

[1] federal claims for false imprisonment, false arrest, illegal
search and seizure, assault and battery, and conspiracy were
time-barred;

[2] existence of probable cause was complete defense to
arrestee's malicious prosecution claim against officers;

[3] New York Constitution did not provide arrestee private
right of action for constitutional tort claims;

[4] arrestee failed to plausibly plead existence of official
municipal policy or custom that resulted in deprivation of
his constitutional rights, as required to state *Monell* claim for
municipal liability; and

[5] public defender's alleged legal malpractice was not
proximate cause of arrestee's injuries.

Affirmed.

West Headnotes (13)

**[1]  Limitation of Actions**
    Liabilities Created by Statute

Arrestee's federal claims against state police
officers for false imprisonment, false arrest,
illegal search and seizure, assault and battery,
and conspiracy accrued, and three-year statute
of limitations for claims brought pursuant to § 1983
and § 1985 began to run, when alleged illegal
search and seizure, arrest, and arraignment all
occurred. U.S. Const. Amend. 4; 42 U.S.C.A. §§
1983, 1985.

4 Cases that cite this headnote

**[2]  Civil Rights**
    Arrest and detention

Existence of probable cause was complete
defense to arrestee's malicious prosecution claim
in § 1983 action against state police officers,
although state appellate court later determined
that initial stop and search of arrestee's vehicle
was unlawful, where, at time of arrest, unlicensed
weapon with loose ammunition was found
in arrestee's vehicle, and, at time prosecution

was initiated, officers reasonably believed that arrestee was in criminal possession of a weapon in violation of New York law. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; N.Y. Penal Law § 265.03.

1 Cases that cite this headnote

**[3]     Process**
     🔑 Particular cases

Arrestee failed to allege that state police officers had improper purpose in instigating criminal prosecution against him, as required to state abuse of process claim under New York law arising out of his arrest and prosecution.

4 Cases that cite this headnote

**[4]     Civil Rights**
     🔑 Existence of other remedies; exclusivity

There were alternative remedies available under § 1983 and common law for arrestee's state constitutional claims against state police officers arising out of his arrest and prosecution, and, thus, New York Constitution did not provide arrestee private right of action for constitutional tort claims. 42 U.S.C.A. § 1983.

15 Cases that cite this headnote

**[5]     Limitation of Actions**
     🔑 Injuries to person

Arrestee's assault and battery claim against state police officers under New York law accrued, and one-year statute of limitations began to run, on date of alleged illegal search and seizure, arrest, and arraignment of defendant. N.Y. CPLR § 215(3).

4 Cases that cite this headnote

**[6]     Limitation of Actions**
     🔑 Torts

Arrestee's New York law claims against state police officers for false arrest and false imprisonment accrued, and one-year statute of limitations began to run, when arrestee was released from prison. N.Y. CPLR § 215(3).

2 Cases that cite this headnote

**[7]     Limitation of Actions**
     🔑 Torts

Arrestee's defamation claim under New York law against state police officers accrued, and one-year statute of limitations began to run, when offending material was first published. N.Y. CPLR § 215(3).

2 Cases that cite this headnote

**[8]     Civil Rights**
     🔑 Criminal law enforcement; prisons

Arrestee failed to allege that county public defenders were personally involved in allegedly violating his constitutional rights, as required to state false arrest, false imprisonment, illegal search and seizure, malicious prosecution, abuse of process, unjust conviction, and assault and battery claims against public defenders in § 1983 action. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[9]     Counties**
     🔑 Service or presentation; timeliness

Arrestee's negligence claim against county clerk accrued, and 90-day limitations period for filing notice of claim under New York law began to run, when arrestee failed his drug test while on parole and was re-incarcerated. N.Y. General Municipal Law § 50-e.

2 Cases that cite this headnote

**[10]     Civil Rights**
     🔑 Criminal law enforcement; prisons

Arrestee failed to plausibly plead existence of official municipal policy or custom that resulted in deprivation of his constitutional rights, as required to state *Monell* claim for municipal liability in § 1983 action against county arising out of his arrest and prosecution; rather, arrestee alleged only that county public defenders abandoned him and failed to act, which

resulted in his unjust confinement. 42 U.S.C.A.
§ 1983.

4 Cases that cite this headnote

[11] **Conspiracy**
⚬ Pleading

Arrestee's allegations that county public
defenders conspired to abandon him and keep
him in confinement were vague, and, thus, were
insufficient to state conspiracy claim under §
1985 arising out of his arrest and prosecution. 42
U.S.C.A. § 1985.

3 Cases that cite this headnote

[12] **Counties**
⚬ Service or presentation; timeliness

Arrestee's legal malpractice claim against county
public defenders accrued, and 90-day limitations
period for filing notice of claim under New
York law began to run, when indictment against
arrestee was dismissed. N.Y. General Municipal
Law § 50-e.

1 Cases that cite this headnote

[13] **Attorney and Client**
⚬ Conduct of litigation

Failure of county clerk to notify New York
Department of Corrections and Community
Services (DOCCS) that arrestee's conviction had
been vacated was intervening cause of arrestee's
extended prison stay, absolving his public
defender of any liability for legal malpractice.

1 Cases that cite this headnote

**\*10** Appeal from two judgments of the United States District
Court for the Southern District of New York (Román, *J.*),
entered September 18, 2015 and February 2, 2016.

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Meir Katz (Robert J. Tolchin, on the
brief), The Berkman Law Office, LLC, Brooklyn, N.Y.

For Defendants-Appellees: Matthew W. Grieco, Assistant
Solicitor General (Steven C. Wu, Barbara D. Underwood,
on the brief), for Eric T. Schneiderman, Attorney General
of the State of New York, New York, N.Y., (for Troy
Antal and Howard Dorner), Daniel C. Stafford, McCabe &
Mack LLP, Poughkeepsie, N.Y. (for Thomas Angell, Esq.,
David Goodman, Esq., Dutchess County Public Defender's
Office, Dutchess County, Steven Levine, Esq., and Bradford
Kendall), and Del Atwell, pro se, East Hampton, N.Y.

PRESENT: PETER W. HALL, DEBRA ANN
LIVINGSTON, Circuit Judges, NICHOLAS G.
GARAUFIS, * District Judge.

## SUMMARY ORDER

Plaintiff-Appellant Keagan Allen appeals from two
judgments of the United States District Court for the Southern
District of New York (Román, *J.*), one granting, with
the exception of Defendant-Appellee Atwell, Defendants-
Appellees' motions to dismiss, and the other granting
Defendant-Appellee Atwell's motion for summary judgment.
Allen argues, among other things, that the district court
erred in dismissing his third amended complaint [hereinafter
"Complaint"] because his various federal and state claims
did not accrue until his state criminal conviction had been
vacated, which he contends occurred in August 2012. He
further contends that the district court improperly dismissed
certain claims for failure to state a claim and that his
state constitutional claims should not have been dismissed
because no alternative remedy exists. We assume the parties'
familiarity with the underlying facts, procedural history,
and issues on appeal. For substantially the same reasons
as articulated by the district court, we **AFFIRM** both the
dismissal and summary judgment decisions.

This Court reviews *de novo* orders granting motions to
dismiss. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d
184, 191 (2d Cir. 2007). To survive a Rule 12(b)(6) motion,
a plaintiff need plead "only enough facts to state a claim
to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007). Although a complaint "does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, **\*12** and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (citations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Likewise, we review grants of summary judgment *de novo*. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). This Court will affirm a grant of summary judgment "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, 'there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.' " *Id.* at 96 (omission in original) (quoting Fed. R. Civ. P. 56(c)).

## A. Claims Against State Defendants

### i. Federal claims

#### a. Statute of limitations

**[1]** With the exception of Allen's malicious prosecution and abuse of process claims, *see infra*, his federal claims for false imprisonment, false arrest, illegal search and seizure, assault and battery, and conspiracy were properly dismissed as time-barred. Claims brought pursuant to 42 U.S.C. § 1983 and § 1985 must be filed within three years of the date on which such claims accrue. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). The standard rule is that accrual occurs when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (citations omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (federal claims accrue at "a point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action"). Because the alleged illegal search and seizure, arrest, and arraignment all occurred on June 22, 2007, Allen's November 2012 Complaint falls well outside the three-year time limit. His federal claims for false imprisonment, false arrest, illegal search and seizure, assault and battery, and conspiracy were therefore dismissed.

#### b. Failure to state a claim

**[2]** Allen's malicious prosecution claim was properly dismissed because probable cause existed for his arrest. " 'The existence of probable cause is a complete defense to a claim of malicious prosecution in New York,' and 'indictment by a grand jury creates a presumption of probable cause.' " *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (citation omitted) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "That presumption may be rebutted only 'by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " *Id.* (quoting *Savino*, 331 F.3d at 72).

Here, the district court was correct to dismiss Allen's malicious prosecution claim. Despite it later being determined by the Appellate Division that the initial stop and search of Allen's vehicle was unlawful, at the time prosecution was initiated there was undoubtedly probable cause to believe Allen was in criminal possession of a weapon. *See* N.Y. Penal Law § 265.03. Indeed, an unlicensed weapon with loose ammunition was found in Allen's car. Moreover, because Allen was indicted by a grand jury, probable cause to prosecute is presumed. *See Manganiello*, 612 F.3d at 162. Nothing in Allen's Complaint even attempts to rebut this presumption, and Allen **\*13** advances no argument to that effect on appeal.

**[3]** Allen's abuse of process claim was also properly dismissed because he failed to plausibly allege that his prosecution was initiated based on an improper purpose. In New York, "[a] malicious motive alone ... does not give rise to a cause of action for abuse of process." *Savino*, 331 F.3d at 77 (alteration in original) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)). "In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action." *Id.* A plaintiff alleging abuse of process must claim that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* Allen's Complaint fails sufficiently to assert any such purpose and thus fails to plead plausibly a claim for abuse of process.

### ii. State constitutional claims

**[4]** Allen's claims brought under the New York State Constitution were properly dismissed. The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983. *See Brown v. State of New York*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996) (recognizing "narrow remedy" for a constitutional tort claim brought under the State Constitution where a plaintiff otherwise has no available remedy). Because alternative remedies were available under § 1983 and common law here, however, the district court properly dismissed Allen's state constitutional claims.

### iii. State-law claims

**[5]** **[6]** Allen's state-law claims for false arrest, false imprisonment, and assault and battery were likewise properly dismissed as barred by the applicable statute of limitations. Allen's assault and battery claims accrued on June 22, 2007, and his false arrest and false imprisonment claims accrued when he was released from prison in September 2010. *See Bellissimo v. Mitchell*, 122 A.D.3d 560, 560, 995 N.Y.S.2d 603 (2d Dep't 2014); *Bennett v. City of New York*, 204 A.D.2d 587, 587, 612 N.Y.S.2d 201 (2d Dep't 1994). All are barred by the applicable one-year statute of limitations. N.Y. C.P.L.R. § 215(3). Allen also fails to state a claim for malicious prosecution and abuse of process under New York law for the same reasons these claims failed when asserted under § 1983. *See supra*.

**[7]** Further, though not specifically addressed by the district court, Allen's defamation claim is also barred by the statute of limitations. An action for libel or slander under New York law must be brought within one year from the date the offending material is first published. N.Y. C.P.L.R. § 215(3); *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188, 848 N.Y.S.2d 7, 878 N.E.2d 589 (2007). New York courts generally apply the "single publication rule." *Nussenzweig*, 9 N.Y.3d at 188, 848 N.Y.S.2d 7, 878 N.E.2d 589. Here, because the publishing event giving rise to Allen's defamation claim occurred no later than February 2008, more than a year before Allen commenced this action, his claims are time-barred.

### B. Claims Against County Defendants

#### i. Individual county defendants

**[8]** Allen's federal claims against the individual county defendants were properly dismissed because Allen failed to allege their "personal involvement" in his false arrest, false imprisonment, illegal search and seizure, malicious prosecution, abuse of process, unjust conviction, and assault **\*14** and battery claims. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Moreover, "when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973). Allen's complaint is devoid of any facts suggesting the personal involvement of any county defendants in the acts that form the basis of his federal claims. The district court properly dismissed those claims against the individual county defendants.

**[9]** Additionally, the district court correctly dismissed Allen's negligence claim against County Clerk Kendall on the ground that Allen failed to comply with New York's notice of claim requirements. *See* N.Y. Gen. Mun. Law § 50-e ("In any case founded upon tort" against a public corporation a notice of claim shall be served "within [90] days after the claim arises"). A negligence claim accrues when an injury is sustained. *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993). Allen's negligence claim therefore accrued at the latest when he failed his drug test and was re-incarcerated on February 29, 2012. Because Allen did not file a notice of claim until September 24, 2012, his claim was barred. [1]

Allen's New York State constitutional claims against the County Defendants are also dismissed for the same reason as those claims against the State Defendants: there were alternative remedies available.

### ii. Dutchess County

**[10]** The district court also dismissed Allen's claims against Dutchess County for failure to state a *Monell* claim for municipal liability. To state such a claim a plaintiff must first demonstrate "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768

F.2d 40, 44 (2d Cir. 1985). And, "[s]econd, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Id.* (quoting *Okla. City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

Allen has failed to plead plausibly the existence of an official municipal policy or custom that resulted in the deprivation of his constitutional rights. In a conclusory manner, Allen alleges that the county defendants—his attorneys—abandoned him and failed to act, which resulted in his unjust confinement. A bare allegation of this sort cannot suffice to demonstrate a sanctioned policy or custom of a government entity caused Allen's alleged injuries.

### iii. Conspiracy claim

**[11]** The district court properly dismissed Allen's conspiracy claim under 42 U.S.C. § 1985 against the county defendants. "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)). "A **\*15** complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993) (quoting *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983) (per curiam)). Because Allen's assertions that the county defendants conspired to abandon him and keep him in confinement are vague at best, his Complaint fails to state a claim cognizable under § 1985.

### iv. Legal malpractice claim

**[12]** Finally, Allen contends the district court improperly dismissed as untimely his legal malpractice claim against the Dutchess County Public Defender's Office, Angell, Goodman, and Levine. Under New York law, a claim for legal malpractice in the context of criminal proceedings accrues when the indictment is dismissed. *Britt v. Legal Aid Soc'y,* 95 N.Y.2d 443, 445, 718 N.Y.S.2d 264, 741 N.E.2d 109 (2000).

Because the indictment was dismissed by the New York Appellate Division on November 1, 2011, *see People v. Allen,* 89 A.D.3d 742, 743–44, 932 N.Y.S.2d 142 (2d Dep't 2011), his notice of claim on September 24, 2012 was untimely. *See* N.Y. Gen. Mun. Law § 50-e.

### C. Claims Against Del Atwell

**[13]** Last, we are not persuaded that the district court erred in granting summary judgment in favor of attorney Atwell. To make out a claim for legal malpractice, Allen must demonstrate "that [Atwell] was negligent, that the negligence was a proximate cause of the injury and that [Allen] suffered actual and ascertainable damages." *Rubens v. Mason,* 387 F.3d 183, 189 (2d Cir. 2004). "In order to establish the elements of proximate cause and actual damages in a malpractice case, the plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Zarin v. Reid & Priest,* 184 A.D.2d 385, 386, 585 N.Y.S.2d 379 (1st Dep't 1992). Summary judgment is appropriate where the record "demonstrates that an intervening cause was responsible for the injury." *Brooks v. Lewin,* 21 A.D.3d 731, 734, 800 N.Y.S.2d 695 (1st Dep't 2005); *see also Kush by Marszalek v. City of Buffalo,* 59 N.Y.2d 26, 32–33, 462 N.Y.S.2d 831, 449 N.E.2d 725 (1983) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant."). Here, we agree with the district court that the record unquestionably demonstrates that the failure of the County Clerk, Kendall, to notify the New York Department of Corrections and Community Services that Allen's conviction had been vacated constitutes an intervening cause of Allen's extended prison stay, absolving Atwell of any liability.

We have considered Allen's remaining contentions on appeal and have determined they are without merit. For the reasons stated above, the district court's judgments are **AFFIRMED.**

### All Citations

665 Fed.Appx. 9

Footnotes

\*    Judge Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

1    We conclude that Allen was required to file a notice of claim for his claims against the individual county defendants under N.Y. Gen. Mun. Law § 50-e(1).

**End of Document**         © 2019 Thomson Reuters. No claim to original U.S. Government Works.

59 Fed.Appx. 421
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Clifton MORRIS, Plaintiff–Appellee,

v.

THE NEW YORK CITY POLICE DEPARTMENT;
P.O. John Doe # 1; P.O. John Doe # 2; P.O. John
Doe # 3; Hon. Robert Morgenthau, District
Attorney of the County of New York; and the
State of New York, Defendants–Appellants.

Docket No. 00–0007.
|
March 11, 2003.

**Synopsis**

Arrestee filed § 1983 suit alleging false arrest, malicious prosecution, and excessive force in violation of his constitutional rights. The United States District Court for the Southern District of New York, Harold Baer, Jr., J., 1999 WL 1201732, dismissed complaint, and arrestee appealed. The Court of Appeals held that: (1) fact issues remained as to whether conviction obtained against arrestee would have depended upon false arrest, and (2) fact issues remained as to whether city's alleged deliberate indifference to proper training of its police officers was moving force behind arrestee's alleged injuries.

Affirmed in part, vacated in part, and remanded.

West Headnotes (2)

**[1]    Federal Civil Procedure**
    Fact Issues

Issue of whether conviction obtained against arrestee would have depended upon false arrest presented fact questions that could not be resolved on motion to dismiss arrestee's § 1983 false arrest claim on limitations grounds. 42 U.S.C.A. § 1983.

4 Cases that cite this headnote

**[2]    Federal Civil Procedure**
    Fact Issues

Issue of whether city's alleged deliberate indifference to proper training of its police officers was moving force behind arrestee's alleged injuries presented fact questions that could not be resolved on motion to dismiss arrestee's § 1983 false arrest claim against city. 42 U.S.C.A. § 1983.

5 Cases that cite this headnote

**\*421**  Appeal from the United States District Court for the Southern District of New York (Harold Baer, Jr., District Judge).

**Attorneys and Law Firms**

Clifton Morris, Greenhaven, NY, pro se.

Paul L. Herzfeld, Asst. Corp. Counsel, New York, NY, for Defendants–Appellants.

**\*422**  Present: POOLER, B.D. PARKER, Circuit Judges, and HALL, [1] District Judge.

**SUMMARY ORDER**

**\*\*1  ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

Plaintiff filed this Section 1983 action in 1998 alleging violations of his civil rights arising from a 1990 arrest. In its December 17, 1999 opinion and order the District Court granted defendants' motions to dismiss the amended complaint pursuant to FRCP 12(b). Specifically, the District Court determined that (1) plaintiff's claims of excessive force and false arrest were time-barred pursuant to the three-year statute of limitations applicable to Section 1983 actions; (2) plaintiff failed to state a claim for malicious prosecution; (3) plaintiff's claims against the New York City Police Department ("NYPD") must be dismissed because it is not a suable entity; (4) plaintiff's claims against the State of

New York are barred by the Eleventh Amendment; and (5) plaintiff's claims against District Attorney Morgenthau are barred by absolute prosecutorial immunity.

We affirm the District Court in all respects except for its holding that plaintiff's false arrest claim is time-barred. This Court held in *Covington v. City of New York,* 171 F.3d 117, 124 (2d Cir.), *cert. denied,* 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999) (citation omitted), that "if success on a Section 1983 claim would necessarily imply the invalidity of a conviction in a pending criminal prosecution, such claim does not accrue so long as the potential for a judgment in the pending prosecution continues to exist." That is, if plaintiff can show that a conviction obtained against him would have depended upon a false arrest, a Section 1983 claim arising from the false arrest does not accrue until such a conviction is no longer a possibility.

 [1]   The District Court held that because plaintiff was not convicted for the crimes charged as a result of his arrest in 1990, his false arrest claim began to accrue from the date of the arrest, not from the date in January 1998 when the state dropped its prosecution of plaintiff on these charges. As defendants concede, the District Court misconstrued our holding in *Covington.* The *potential* for a conviction continued to exist until the state dropped its prosecution in January 1998. Accordingly, plaintiff's false arrest claim did not accrue until this date if he can show that "recovery on [his] Section 1983 false arrest claim in this case would necessary imply the invalidity of any conviction or sentence arising from the criminal proceedings." 171 F.3d at 122. Because this is an inherently factual inquiry, *id.,* we vacate the District Court's dismissal of plaintiff's false arrest claim and remand for further proceedings.

 **\*\*2**  [2]   Because we affirm the District Court's holding that plaintiff's claims against the NYPD must fail because it is not a suable entity, the District Court is directed to allow plaintiff the opportunity to amend his complaint to name the City of New York as a defendant. For the City to be properly named as a defendant, plaintiff must properly allege that his arrest took place pursuant to some unconstitutional  **\*423**  custom or policy of the City's. *See Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). Plaintiff's appellate brief contains allegations that he was arrested by police officers "known for" engaging in harassment and that the City failed to properly train these officers. A claim of inadequate training may properly serve as the basis for Section 1983 liability if plaintiff can demonstrate that the City's "deliberate indifference" to proper adequate training was the "moving force" behind his alleged injuries. *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407–08, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff should be afforded the opportunity to file an amended complaint which sets forth factual allegations sufficient to make such demonstration.

Accordingly, for the reasons set forth above, the instant appeal is hereby **AFFIRMED IN PART** and **VACATED AND REMANDED IN PART** for further factual findings in accordance with this order.

### All Citations

59 Fed.Appx. 421, 2003 WL 943780

Footnotes

1      The Honorable Janet C. Hall, United States District Court for the District of Connecticut, sitting by designation.

---

                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.   2